## ROBINSON VS. BISHOP AND WIFE.

A subsequent limitation of personal property, that had been given to, and absolutely vested in the first taker by a previous clause in the will, declared illegal. (*Slaughter vs. Slaughter, ante.*)

The intention of the testator should be derived from the terms of his will, rather than from the testimony of the draftsman.

A failure of issue is taken to be indefinite, not according to the course of after events, but as the possibility thereof may exist at the death of the testator.

The words "heir at death," in the will under consideration, as "die without heir," in *Slaughter vs. Slaughter,* declared to mean "child" or "descendant."

*Appeal from Union Circuit Court in Chancery.*

Hon. LEN B. GREEN, Circuit Judge.

J. H. ASKEW for appellant.

Under the state of case, did the court err in making the decree, to reverse which this appeal was taken? We insist it did.

And 1st, we maintain that it was competent to prove the sense in which the testator used the words "*die without an heir at death,*" as expressed in the 7th clause of his will by the scrivener who wrote it.

That is, it is competent to prove that he did not mean by the word "*heir,*" those, who, by law, would take as in case of intestacy, in a technical sense, but that he meant issue of the body of the said Fanny E., living at the time of her death, and to this point we think is the case of *Glanton vs. Anthony et al.,* 15 *Ark.,* 543; *Ryers et al. vs. Wheeler,* 22 *Wend.,* 148, and particularly at p. 153, where the court declares the declarations of the testator are receivable to give a name or character, either to

the devisee or the property devised—and upon the admission of testimony generally, to explain writing, see 1 *Greenl.*, commencing at *sec.* 296; 1 *Phil. on Ev., top p.* 532; *and note* 939; 2 *Phil..from* 646 *to* 650, *and* 3 *v. p.* 1362; 1 *Story Eq., from sec.* 152 *to* 161, *inclusive;* 6 *Cruise Dig.;* 170; *Hall vs. Leonard,* 1 *Pick.,* 27; where the court expressly declared, a parol averment may be admitted to ascertain the person meant: see, also, *Powell vs. Biddle,* 2 *Dall. R,* 70; *Thomas vs. Stevens,* 4 *J. C.* 607; and as a consequence to ascertain one not meant, 10 *Mass., Sargent vs. Town;* in this case the court permitted parol. testimony to enable it to determine the character of the estate intended to pass by the will.

And surely this testimony is competent, at least to show: 1st, that the testator did not intend to use the word "heir" in a technical sense, under our statute of descents and distributions, or if he did, which one of his heirs, both the complainant and appellant, come within that description of persons by the use of the word in its technical sense, if the word "heir" applies to those who may take by our statute in the ascending line has any technical sense attached to it at all. And secondly, that the testator did not regard either of the parties as heirs in the sense in which he used the term, and we think that *Lord Chenny's* case clearly demonstrates the admissibility of the testimony: see 1 *Phil. Ev.* 532.

And 2dly. We insist that the claim of the appellant, under the will of the testator, belongs to that class of cases, denominated contingent executory devises—such a devise, upon a contingency to happen in the extent of a life or lives in being, and twenty one years and a fraction, is always allowed. And in determining the rights of the appellant, the first question that presents itself is, whether the devise over is upon a definite or indefinite failure of issue, and that it is the former, there can be no doubt, as the contingency in this case is in these words: "It is also my desire, that if my said daughter, Fanny E. Robinson, or any mutual offspring that may exist between myself and beloved wife, depart this life before arriving at the

age of maturity, or without an heir at death, in that event, all the property which may have been inherited through me, in any way, shall be inherited by my beloved father; and, in case of his demise before [any of these circumstances occur," then over to his wife, complainant and others. See *Williams vs. Daniel*, 12 *Wheat.* 564; 4 *Kent* 268, 270, 271, 272, 275; *Fasdick vs. Cornell*, 1 *J. R.* 440; *Moffatt vs. Strong*, 10 *J. R.* 12; *Jackson vs. Stats*, 11 *J. R.* 337; *Wilks vs. Lyon*, 2 *Cow.* 362; *Lion vs. Burtis*, 20 *J. R.* 483; *Richardson vs. Noys*, 2 *Mass.* 57; *Kirkpatrick vs. Kirkpatrick*, 13 *Ves.* 476; *Hulbert vs. Emmerson*, 16 *Mass.* 241; *Cook vs. Derandes*, 9 *Ves.*—; *Chandler vs. Price*, 3 *Ves.* 99. And having, as we conceive, by the foregoing authorities, fully shown that the devise over to appellant, was upon a definite failure of issue, it is therefore not void, as being too remote.

The next question that presents itself is, is the devise over to the appellant void, as being repugnant to what precedes it? We think not; and in determining this question, due regard must be had to the construction of wills.

And one rule is, that the intention of the testator is the first and great object of enquiry. *Maulding et al. vs. Scott et al.*, 13 *Ark. p.* 92. And to this object technical rules are, to a certain extent, made subservient. See 4 *Kent* 534–5, *note a and b*; 6 *Cruise Dig.* 147, *title Devise*; *Helmer and wife vs. Shoemaker*, 22 *Wend.* 136; 2 *Atk.* 280; 2 *Roper on Leg.* 421, *and cases there cited*; *Rathborn vs. Dyckman*, 3 *Paige, p.* 26–7–8–9.

Another rule is, that if two parts of a will are totally inconsistent, the latter prevails. 2 *Roper* 322, 328, 329.

Another rule is, that the whole will shall be construed together, if possible. 2 *Roper* 330; 6 *Cruise* 147, *s.* 2. And to this end words may be supplied or transposed. 2 *Roper* 321, 322; 6 *Cruise Dig. p.* 150, and authorities there cited; 6 *J. R.* 54. And chancery is more liberal than courts of law; 2 *Atk.* 280. And with these rules we insist there is no repugnancy in the devise over, and to this point, cite the following authorities:

*Deane vs. Test,* 9 *Ves.* 147; *Davidson vs. Dallas,* 14 *Ves.* 576; *Hughes vs. Sayer,* 1 *P. Wms.* 534; *Fosdick vs. Cornell,* 1 *J. R.* 440; 10 *J. R.* 12; 11 *J. R.* 337; *Wilks vs. Lyon,* 2 *Cow.* 362; *Lion vs. Burdis,* 28 *J. R.* 483; *Richardson vs. Nays,* 2 *Mass.* 56; *Harrison vs. Foreman,* 5 *Ves.* 209; 1 *Roper* 414; *Davidson vs. Dallas,* 17 *Ves.* 576; 3 *Atk.* 396; 2 *Atk.* 280; *Sargent vs. Towne,* 10 *Mass.* 307, *and note a,* and the authorities cited by this court in the case of *Moody vs. Walker,* 3 *Ark.* 148, and particularly those in the brief of the able attorney of Moody.

We apprehend, however, that but for the misconception of appellee, as to what this court really decided in the case of *Moody vs. Walker,* appellee never would have filed her bill in this cause, and, no doubt, rests her whole case upon that case. We think that there is a vast difference between the two; in that case there was no time specified, at which the devise over was to take effect, and the court, upon the express ground, that it was bound by precedent, decided against what it believed to be the intention of the testator, because there were no words in the will indicating that he did not mean to be technically understood; and, therefore decided the devise over to be upon an indefinite failure of issue; because the testator, in that case, failed to say, that the devise over should take effect at the death of his daughter, Nancy.

CARLETON, for the appellee.

It may be well to lay down some general rules of construction of wills before we take up the will itself.

The first rule is, that the intention of the testator must prevail, if not inconsistent with the law. *Moody vs. Walker,* 3d *Ark.* 185.

2d. Every clause should be so construed with reference to the other items, that each item may take effect.

3d. The will itself is the only thing to which reference can be had. 1 *Green. Ev.* secs. 289 *and* 290; *Hiscock vs. Hiscock,* 5th *M. & W.* 363 *and* 367; *Brown et al. vs. Salternstall,* 3d *Met.* 423;

*Jackson vs. Sill,* 11*th Johnson Rep.* 501; 5*th Prop.*; *Wigram on Wills* 11 *and* 12; 3*d conclusion ib.* 211, 212, 213 *and* 214.

There are two exceptions to this rule—but two, viz : First, when the thing devised is not sufficiently described in the will to enable the court to ascertain from it what is intended to be devised. 5*th Prop. Wigram on Wills, p.* 11 *and* 12; 1*st Greenl. Ev. secs.* 289 *and* 290. Second, when the devisee is not sufficiently described in the will to enable the court, from it, to tell for whom the bounty was intended. *Ib.* Here the appellant attempts to use as evidence what the scrivener, Gatlin, meant by the 3d and 7th items of the will. A proposition most preposterous! Were such received, no will could stand.

4th. The words of the will should be taken in their primary and technical sense, unless it appear from the context that they were intended to be used in their secondary or popular sense. *Wigram on Wills, Prop.* 1 *and* 2; 3*d Conclusion ib.* 212 213 *and* 214.

5th. Plain and unambiguous words need no constructions. 2 *Kent.* 554, (5*th ed.*)

6th. A devise will always be held absolute, unless it clearly appear from the will that it was the testator's intention to limit it. *Moody vs. Walker,* 3*d Ark.* 188; *Patterson vs. Ellis,* 11*th Wend.* 299.

7th. If the first taker have the power of destroying or defeating the limitation over in personal property, he takes absolutely. 2 *Kent.* 252, *seq.*; *Patterson vs. Ellis,* 11*th Wend.* 275; *Moody vs. Walker,* 3*d Ark.* 185.

8th. When the testator gives personal property absolutely, and then attempts to create a limitation over, the limitation is void. *Moody vs. Walker,* 3*d Ark.* 189; *Williamson vs. Daniel,* 12 *Wheat.* 568.

Having laid down these rules, let us proceed to apply them to the case at bar.

It is clear that the third item of the will gives an absolute estate standing by itself. It makes no limitation, nor reference to any clause making one, but gives absolutely the effects

including choses, of which he may die seized and possessed. But appellant insists that the 7th item is intended, and does control and limit the third, which we deny. 1st. The 3d item, without reference to the 7th, gives to Fanny E. absolutely all property, (not disposed of otherwise,) his negroes, ready money, his interest in his grand-father's estate, and all which may be due at his death from his father or mother's estate. 2d. The 7th item does not refer to the 3d, nor to the effects conveyed in it; but in case Fanny E. should die without heir, and before arriving at maturity, then (not what I have given her in the 3d item) all property (future) which may have been *inherited* (not hereby given) through me in any way, shall be *inherited* by my beloved father, etc. 3d. The 3d item gives to Fanny E. all property and effects which he dies possessing, or having the absolute right to; the 7th, all that may accrue to him or her as his representative after his death.

4th. The word "inherit" has a fixed legal meaning, and applies solely to real estate. *Kelly's heirs vs. McGuire & wife,* 15th *Ark.* 555; 4th *Rule of Construction; ch.* 56, *sec.* 20, *Gould's Dig. p.* 443.

5th. It is not the effects given by the will that are referred to in the 7th item, but any *inheritance* which may come to said Fanny E., as the testator's representative after his death. He gives one—she is to inherit the other—clearly two estates.

To say the least, it is left extremely doubtful, and under the 6th rule of construction, before laid down, Fanny E. would take the absolute title. *Moody vs. Walker, 3d Ark.* 188.

There was no restriction on her as to selling or disposing of it; and so her guardian, under the Probate or Chancery Court, might have sold or disposed of it for her benefit during minority, and, had she lived, at maturity she could have done so herself. *See 7th rule of construction above given, and authorities.*

But lastly, the third item gives the property therein specified absolutely; and if the testator intended and did attempt to limit the interest and property given in the 3d by the 7th, the

limitation in the 7th is void.  *See* 8*th Rule*; *Moody vs. Walker* 3*d Ark.* 189; *Williamson vs. Daniel et al.*, 12*th Wheat.* 568.

It results, then, as an inevitable conclusion, that Fanny E. took the effects given in the 3d item absolutely, and that on her death they passed to her nearest heir, or next of kin, (appellee,) according to the law of her domicil.  2*d Kent* 426.

GARLAND & RANDOLPH, also for appellee.

Only in extremely doubtful cases is it allowed to introduce extrinsic evidence of what the testator meant or to whom he intended to give his property.  *Gresly's Eq. Ev.* 203; 8 *Bingham*, 244; 1 *M. & W.* 129.

Even if an expression in the will be doubtful, the heir cannot therefore be disinherited; but is always to be favored.  3 *How. U. S. Rep.* 470, *Roper on Legacies.*

The estate to Fanny E. vested *eo instanti*, was absolute, and her mother, appellee, takes the property as her next of kin, and all of our adjudications hold this without exception.  3 *Ark* 185; 13 *Ark.* 91; 15 *Ib.* 555; 19 *Ib.* 66.

Mr. Justice FAIRCHILD delivered the opinion of the court.

In June, 1855, in Union county, Nathaniel W. Robinson made his last will, from which the following is taken:

Item 3. All the balance of my property, negroes, ready money, and estate of whatever kind which I may be possessed of, or that may be due and coming to me from my grandfather's estate in the State of Georgia, or in any way coming from my father or mother, I give to my beloved daughter, Fanny E. Robinson, together with any mutual offspring that may ever exist between myself and beloved wife.

The fourth, fifth and sixth items of the will provide for its execution, for the guardianship and education of the daughter and other possible children, and are followed by the seventh item in these words:

Item 7. It is also my desire that if my said daughter, Fanny E. Robinson, or any mutual offspring that may exist between

myself and beloved wife, depart this life before arriving at the years of maturity, or without an heir at death, in that event, all the property which may have been inherited through me in any way, shall be inherited by my beloved father, and in case of his dissolution before any of these circumstances occur, then, and in that event, the same I bequeath to my beloved wife, Nancy Robinson, my beloved brothers, Isaac T. Robinson and James G. Robinson, and sister Mary Ann Rebecca Robinson, all as upon the same equality of inheritance.

The testator died in the month after he made the will, the daughter, Fanny E. Robinson, being his only child. In October of the same year she died, and Benjamin P. Robinson, the father of the testator and executor of the will, claimed the property given to the daughter in the third item of the will to be vested in himself by the seventh item of the will.

And upon settlement of his executorship, Benjamin P. Robinson obtained an order from the Probate Court of Union county vesting the amount of money and slaves remaining in the hands of the executor, as appeared by his settlement, as his own property, as residuary legatee of the whole estate of Nathaniel W. Robinson. This was in October, 1857, and in September, 1858, Nancy S. Robinson, the widow of Nathaniel W. Robinson, filed her bill on the chancery side of the Union Circuit Court, in which, as the heir of her daughter, Fanny E. Robinson, she claimed that the money and slaves, and effects in the hands of Benjamin P. Robinson, which came to him as the executor of Nathaniel W. Robinson, should be transferred to her.

The court sustained her bill in adjudging that Fanny E. Robinson took an absolute interest in the property mentioned in the third item of the will, that Nancy S. Robinson was the heir of her daughter, and in decreeing that Benjamin P. Robinson pay to her the amount of money in his hands, as the executor of Nathaniel W. Robinson, as shown by his account current filed at the October term, 1857, of the Probate Court, and that

he should deliver to her the slaves, with hire, that belonged to the estate of Nathaniel W. Robinson. Benjamin P. Robinson appealed from the decree, and during the pendency of the appeal in this court, Nancy S. Robinson has married, and her husband, Caldwell Bishop, has been admitted as a party, with his wife, to defend the case here.

After the death of Nathaniel W. Robinson, his widow, with her daughter, removed to Louisiana, and there the daughter died; but whether the domicil of the daughter were the residence of her mother, or that of her guardian, where her interest, as her father's legatee, was, is immaterial in this case, as the mother, by the law of Louisiana, as well as of this State, was entitled to the money and slaves of her deceased daughter. And the question simply is, whether under the third item of the will, the daughter took an absolute interest in the personal property therein mentioned. The affirmative of this has been settled upon a full consideration of this subject as presented by this will, and by the will of John Pollard, construed in *Slaughter vs. Slaughter*, just decided, and we hold, without hesitation, that Benjamin P. Robinson did not obtain title to the money and slaves in his hands as executor of Nathaniel W. Robinson, by the seventh item of the will, as that was an illegal attempt to limit property to Benjamin P. Robinson that had already been given to and was absolutely vested in Fanny E. Robinson. *Denson vs. Thompson*, 19 *Ark*. 69, may be mentioned as another recognition by this court of *Moody vs. Walker* that was not referred to in *Slaughter vs. Slaughter*. See, also, *Massey vs. Parker*, 2 *M. & R.* 184; *Cuthbert vs. Purrier*, 1 *Jac.* 417; *Jackson vs. Ball*, 10 *Johns*. 20; *Jackson vs. Robins*, 16 *Jhs.* 590.

We prefer to construe the will under consideration from its own terms, rather than to take the deposition of its draughtsman as declaratory of the intention of the testator. We are not convinced of the propriety of the mode of interpretation insisted on in this court.

The limitation over in this will, as in the will of John Pol-

lard, was not void for being too remote, for in each case it was dependent upon a definite failure of issue. And though in this case the failure of issue was accomplished in the next October, while in *Slaughter vs. Slaughter*, sixty-five years elapsed before the death of Elizabeth Pollard, and she then left Catherine Slaughter living, a surviving grandchild of John Pollard, each limitation was to take effect upon the death of a person alive when the wills were made. A failure of issue is taken to be indefinite, not according to the course of after events, but as the possibility thereof may exist at the death of the testator. *Clare vs. Clare, Cas. temp. Talbot* 26; *Patterson vs. Ellis*, 11 *Wend.* 299; *Hawley vs. James*, 16 *Wend.* 171; 4 *Kent* 283; *Ibbetson vs. Ibbetson*, 10 *Sim.* 515.

We also think that the words in this will "heir at death," and in the will of Pollard "die without heir," are to be taken in their general acceptation, by which heir would mean child or descendant. *Cox vs. Britt*, 22 *Ark.*

The decree of the court below is affirmed.