## COCKRILL VS. ARMSTRONG.

1. DOWER: *Joint tenancy.*

    Dower will not be carved out of an estate held in joint tenancy; seizin in severalty is requisite to support it. The alienation which severs a joint tenancy cuts off dower, because the same act of the husband by which the joint estate is severed, operates to pass the fee of his moiety to his grantee.

2. JOINT TENANCY: *How created under the statute.*

    Under the provisions of sec. 837, Gantt's Digest, a joint tenancy can only be created by a grant, or devise, to executors or trustees, as such; or, by the express terms of the grant, or devise.

3. **WILL:** *Construction of.*

A will contained the following provisions: " *First*—I hereby bequeath and devise all my estate, real and personal, including all my effects, of every description whatsoever, subject to the limitations hereinafter set forth, to my sons, * * * whom I constitute my sole executors. *Second*—It is my wish and desire that my plantation * * * shall not be sold or disposed of, but remain and continue as at present, to be kept together with all my other effects, under the joint management of my executors aforesaid; not to be divided, but to remain as an entire estate until my son * * becomes of age; and in the event of either of my sons dying without issue, before that time, the survivor, or survivors, to succeed, as heirs and executors:" Held, that the first clause was intended to be a devise to the sons simply, and under the statute they would hold the estate as tenants in common; that the second clause was only intended as a limitation upon the use and disposition of the estate until the minor son became of age.

4. ————:

The third clause was as follows: " Having full confidence in my sons aforesaid, and in their disposition to deal fairly, justly and liberally, I leave it to them to make proper and suitable provision for their sisters, * * *:" Held, that it was the intention of the testator to charge the estate in the hands of the sons with the maintenance and suitable provision for the daughters.

5. ————:

Wills are always liberally construed, and every legitimate conclusion indulged, in order to reach a just and equitable result; words and sentences must be so considered and construed as to arrive at the real intention of the testator.

6. ————: *How trust may be created by.*

Express words are not necessary to the creation of a trust by will; if, from the language used, in view of the whole disposition of the estate, such an intention is manifest, a trust will be implied.

7. ————:

The fifth clause of the will was as follows: " It is my desire that my grandson * * be brought up and educated at the cost and expense of my estate:" Held, that it created an express trust and charge upon the estate. The terms wish and desire must be construed as imperative upon the executors.

8. **DOWER:** *Out of trust estate.*

Where the trustee has an interest in the subject of the trust, whether created by deed or otherwise, the wife is entitled to dower to the extent of such interest, if it can be decreed to her without interfering with the trust estate, or defeating the purpose of the trust.

9. ——————:

   While land is in the custody of an executor, who is also a devisee under the
   will, it is not subject to dower in favor of the wife of such devisee.

10. —————:

   Upon the sale, by executors, of the real estate of the testator, for the pay-
   ment of debts of the estate, the purchaser takes the title, free from dower
   in favor of the wife of a devisee.

11. —————:  *Out of encumbered estate.*

   Where the estate is subject to paramount incumbrances, the widow will be
   endowed out of the equity of redemption. And where the purchaser
   thereof has expended money in removing the incumbrances, she will be
   required to refund it, with interest, before she can assert her right to
   dower.

APPEAL from *Jefferson* Circuit Court in Chancery.

Hon. JOHN A. WILLIAMS, Circuit Judge.

*Cockrill* and *Rose,* for appellant.

*H. Carlton, contra.*

WALKER, J.:

This action was brought by Matilda P. Armstrong, as widow
of James T. Armstrong, deceased, to have dower assigned her
out of several tracts of land, of which, she alleges, her husband,
during coverture, was seized as of an estate of inheritance.

The question as to whether the estate of the husband was an
absolute estate, or was so incumbered and qualified that dower
did not attach, presents the material question of contest.

The facts are, that William Armstrong, at the time of his
death, in 1847, was the owner of several tracts of land, negroes
and personal estate ; that he had no wife living, but had chil-
dren and heirs—three sons, three daughters and an infant grand-
son ; that he made a will by which he devised all of his estate
to his three sons, but whether absolutely, or coupled with a trust
to support his daughters and educate his grandson, is a disputed
fact which will be hereafter referred to ; that, at the time of his
death, his lands were incumbered with a mortgage to the Real

Estate Bank of $25,400, with interest, and after his death, by his sons, who were appointed executors of the estate, the lands were further iucumbered with the payment of a debt of $10,000 to William Wilson, and $30,086.64 to McGregor, Alloway & Co. The mortgage deed to Wilson was executed on the 17th of April, 1849; that made to McGregor, Alloway & Co., was executed on the 19th of August, 1854.

In February, 1856, the defendant, Cockrill, bought of James T. and Francis W. Armstrong an undivided two-thirds interest in the lands, so devised by their father, for the consideration of $13,000, and an agreement, also, to pay two-thirds of the incumbrances upon the land, and David I. Armstrong, the other son, the other third part of such incumbrance.

Under this purchase, Cockrill, claiming to be the owner of an undivided two-thirds interest in the lands, entered, as tenant in common, with David I., upon the lands.

There appears to have been a verbal agreement between the brothers as to the particular tracts of land to be held by each, and this was understood when defendant, Cockrill, purchased the undivided interest of two of the brothers.

In 1858, Cockrill and David I. Armstrong made partition of the lands. By the division, lands in secs. 1 and 12 were set apart to defendant, Cockrill; subsequently he exchanged with David I. Armstrong, and let him have the lands in secs. 1 and 12, and took other land in exchange, and gave to David I. $4,000 or $5,000.

At the time of Cockrill's purchase, there were about 350 acres of cleared land; since then fifty or seventy-five acres of the improved land have fallen into the river, since which time defendant, Cockrill, claims that on the lands purchased by him he has cleared and put in cultivation 500 acres, besides other improvements, and to have paid and satisfied two-thirds of the incum-

brances on the land, according to agreement; claims in his answer that he should be subrogated to the right of the mortgagors whose debts he has paid, and that if dower is allowed to plaintiff he is entitled to payment out of the dower for the sums so paid and for improvements upon the lands.

There were other parties made defendants, residents upon other tracts of the land set apart to David Armstrong, who have not appealed and whose claims need not be considered.

The case was heard in the court below upon the bill, answer, exhibits and depositions, upon consideration of which the court found: that the plaintiff was the widow of James T. Armstrong, who departed this life in 1873, that during coverture he was seized and possessed of an estate of inheritance by devise of one undivided third interest jointly with his brother Frank and David in the lands; that the rents of the lands were worth more than the improvements made upon it, and decreed to plaintiff dower in the lands. From which defendant Cockrill has appealed.

In order to entitle the widow to dower, her husband must, during coverture, have been seized of an estate of inheritance in the lands, out of which she claims to be endowed.

It is insisted by the counsel of defendant Cockrill that for several reasons the husband had no such estate in the lands as entitled the widow to dower.

*First*—Because the husband acquired an estate with his brothers, David and Frank, in joint tenancy, that such an estate is not an estate of inheritance.

That such is the common law rule, is certainly true. The seizin of the husband must be a sole seizin, the rule requires that seizin shall be sole, both of the freehold and of the inheritance. So stringently is this rule applied that where one joint tenant claims his share, whereby the joint tenancy is severed, and the possibility of survivorship of the other joint tenant is

destroyed, it is nevertheless held that the wife of the former shall not be endowed; upon the principle it is said that the same act of the husband by which the joint tenancy is severed, operates to pass the fee of his moiety to the grantee. 1 Scribner, Ch. 12, sec. 33.

In 4 Kent Com., 37, it is laid down that the husband must have had seizin of the land in severalty, at sometime during the marriage, to entitle the wife to dower. No title to dower attaches on a joint seizin, the mere possibility of the estate's being defeated by survivorship prevents dower.

The seizin, to be effective, must be substantial, not a mere transitory seizin for an instant, as where the husband takes a conveyance in fee, and at the same time mortgages the land back to the grantor. Kent Com., 4, 38, 39. In such case the husband is not deemed sufficiently, or beneficially seized, by an instantaneous passage of the fee in and out of him, to entitle the wife to dower.

Such is clearly the rule at the common law, and conceding that the brothers were in this instance joint tenants, and that the tenancy had not been severed by partition at the time that James Trooper Armstrong conveyed his interest in the lands to Cockrill, the case would come directly within the rule laid down by Scribner and Kent. The alienation which severs the joint tenancy, cuts off the widow from dower, because the same act of the husband, by which the joint estate is severed, operates to pass the fee of his moiety to the grantee.

The deed from the husband to Cockrill severed the tenancy, and in the same act passed the fee to Cockrill and left no seizin or estate of inheritance.

It is, however, contended by counsel for the plaintiff that by statute the common law rule with regard to joint tenancies has been changed.

The statute referred to reads as follows: "Every interest in real estate granted or devised to two or more persons, other than executors and trustees, as such, shall be in tenancy in common unless expressly declared in such grant or devise to be a joint tenancy." Gantt's Dig., sec. 837.

There can be no question as to the intention of this enactment, and under it we must hold: That it is only where the grant is to executors or trustees, as such, or where by the terms of the grant or devise, a joint tenancy is devised, that a joint tenancy can exist. It is, therefore, not sufficient that an estate be granted or devised to several persons, to make them joint tenants. The deed or devise must declare that they are such, in order to bring the parties within the common law rule upon the subject of joint tenancy.

It therefore becomes necessary to determine whether in this devise it was in terms intended that these sons should hold as joint tenants.

The language of the devise is as follows: " I hereby bequeath and devise all my estate, real and personal, including all my effects of every description whatever, subject to the limitations herein set forth, to my sons James Trooper Armstrong, David I. Armstrong and Frank Will. Armstrong, whom I constitute and appoint my sole executors.

"*Second*—It is my wish and desire that my plantation below Pine Bluff, including the adjoining lands, and all the appurtenances, shall not be sold or disposed of, but remain and continue as at present, to be kept together, with my negroes and all my other effects under the joint management and control of my executors aforesaid, not to be divided, but to remain as an entire estate, until my son Frank becomes of age, and in the event of either of my sons dying without issue before that time, the survivor or survivors to succeed as heirs and executors."

Upon a fair construction of these provisions, we think that the first clause was intended to be a devise to the sons of the estate simply, and although at the common law they would hold the estate as joint tenants, yet under our statute they hold as tenants in common.

The second paragraph was only intended as a limitation upon the use and disposition of the estate until the minor son became of age.

We must therefore hold that this objection is not well taken.

The second ground assumed by the defendant's counsel is that by the terms of the will, the estate was devised to the sons, coupled with a trust to provide for the three daughters, and for the education and care of the minor grandson.

The testator, after the devise of his estate to his three sons, provides:

"*Third*—Having full confidence in my sons aforesaid, and in their disposition to deal justly and liberally, I leave it to them to make proper and suitable provision for their sisters Susan, Margaret and Nancy."

In the absence of any apparent cause why the whole estate should have been given to the sons, it is to be presumed that the testator contemplated making suitable provision for his daughters also, who we may presume were entitled to the same care, protection and support as the sons were, indeed the obligation of a parent always strong to provide for his children, is presumed to be stronger towards the daughters than the sons, their inability to protect themselves, the very unremunerative and limited sphere of action assigned them in society, and more particularly daughters educated, as we may suppose from the circumstances of the testator, they were; we must not indulge the belief that the father intended to make no provision out of his estate for the support and maintenance of his daughters.

After placing this large estate in the hands of his sons, he says: "In full confidence in the disposition of my sons to deal justly and liberally with their sisters, I leave it to them to make proper and suitable provisions for them."

What did the testator mean by the terms justly and liberally? What by the terms proper and suitable provisions for their sisters? Surely not less than the sons themselves received, and these appeals to the sons to act justly and liberally, imply that they had received a consideration which in justice imposed upon them the duty, out of this estate, to provide for the sisters by settling upon them a portion of the estate, a suitable portion, a liberal provision. Whether tender age or other cause prevented the father from setting apart a portion of his estate for his daughters, or why he left it with his sons to make this provision for them, the conclusion is irresistible that the father intended to place the estate in the hands of his sons for themselves and in trust for the support of their sisters.

Wills are always liberally construed, and every conclusion which may be legitimately indulged in order to reach a just and equitable conclusion, is not only permissible but is required. Words and sentences are to be considered, and construed, so as to reach the real intention and purpose of the testator.

So strong is the presumption that a father would not intentionally omit to provide for all of his children, that in case the name of one or more of the children is left out of the will, by statute it is held to be an unintentional oversight, and the law brings them within the provisions of the will, and makes them joint heirs in the inheritance.

It is not necessary to use the word *trust*, or to direct property to be held in trust. But if, from the language used, in view of the whole disposition of the estate, an intent and purpose may be reached which implies a trust, a trust will be implied.

Perry says: "Implied trusts are those that arise when trusts are not directly or expressly declared in terms, but the courts, from the whole transaction, and the words used, imply or infer that it was the intention of the parties to create a trust. Courts seek for the intention of the parties, however informal or obscure the language may be; and if a trust can fairly be implied from the language used, as to the intention of the parties, the intention will be executed, through the medium of the trust."

In order to present this question in its true light, let us suppose that one of these daughters had filed a bill against the brothers, and charged them with a breach of trust in not making suitable provision for her support out of this large estate, for not having acted justly and liberally by her, as was in confidence expected of them by their father. We cannot doubt but that upon a proper showing of neglect a court of equity would require that a suitable provision should be made for her maintenance, and, if necessary, would lay hold of the estate for that purpose, and, if so, it would be because a trust was created by the will in her favor.

The language used, when taken in connection with the obvious purpose of the testator, is much stronger than is frequently held sufficient.

Perry gives many examples, where gifts or bequests are made, coupled with terms which imply a purpose sufficient to raise a trust, thus at Ch. 4, sec. 112, vol. 1, he says: "That if a testator make an absolute gift to one person in his will, and accompany the gift with words expressing a "belief," "desire," "will," "request," "hope" or "confide," have the "fullest confidence" and other like expressions, the courts will consider the intention of the testator as manifestly implied, and they will carry the intention into effect by declaring the donee, or first taker, to be trustee for those whom the donor intended to benefit."

Many other expressions are given where it has been held that a trust would not be implied.

In all cases the general purpose and end to be effected must necessarily be taken into consideration in determining the question as to whether a trust was or not intended to be raised.

We have given this subject the most careful consideration, and have reached the conclusion that the intention of the testator was to vest the legal title to the estate in his sons, and to charge the estate in their hands with the maintenance or suitable provision for his daughters; no other conclusion can be reached without imputing to the father the great wrong, without apparent cause, of disinheriting his daughters.

" *Fifth*—It is my wish and desire that my grandson, William Armstrong Cocke, be brought up and educated at the cost and expense of my estate."

Here an express trust was created, and a charge declared upon the testator's estate. The terms " wish," and " desire," must be construed as imposing a direct obligation upon the executors to make such expenditure, and to charge the estate with the expense. Taking this provision in connection with all of the others in the will, does but strengthen the conclusion, that it was really the intention of the father to provide out of his estate for all of his children. The will is short and concise, the general purpose clearly expressed.

The estate of the testator consisted of lands, negroes, stock, and farming implements; the cultivation of the plantation his occupation and means of support; his children, two grown sons, the third not then of age, three daughters and a grandson. It may be presumed that he thought it best to keep the estate together, and have the lands cultivated for the payment of his debts and the support of his children. To this end he devised

the whole of his estate to his three sons, appointed them his executors, and directed that the estate should be kept together as an estate until the youngest son should become of age.

The sons may be presumed to have been capable of managing the estate, the daughters not. The extent of their incapacity, whether from tender age or other cause, does not appear.

The whole estate was devised to the sons, evidently for the purpose of enabling them to manage and settle the estate, and provide for and support the sisters, and take care of and educate the grandson, and this was, no doubt, intended to be a charge upon the estate; a trust confided to the sons; not a naked trust, but one coupled with an interest.

In a trust without an interest in the trustee, the wife of the trustee would not have been entitled to dower, because the dower interest would have diverted a portion of the estate from the use and purpose for which the trust was created, (1 Wash. R. Prop., 162.) but where the trustee has an interest in the estate conveyed to him in trust, whether created by the deed or otherwise, then, to the extent of such interest, the wife is entitled to dower. 4 Kent Com., 436.

Scribner, Ch. 19, p. 393: "Although the wife is not dowable when the husband holds nothing but the dry legal title, without any beneficial interest in the land, yet, if any substantial interest therein be conferred with the estate, to that extent it is supposed she would be entitled to dower."

In the case under consideration, the devisee certainly had such interest, and his wife (the plaintiff), to the extent of such interest (if the estate was not otherwise incumbered), would be entitled to dower, to be so decreed as not to interfere with the trust estate, or to defeat the purpose for which it was created.

We must, therefore, hold that the grounds assumed by counsel for Cockrill, unless in this qualified sense, is not well taken.

The third ground of objection to the widow's claim to dower is, that the estate of William Armstrong was, at the time of his death, charged with the payment of a debt secured by mortgage and that the estate passed to and vested in the devisees, subject to the prior rights of the executors, with an immediate right of possession and seizin and use, and, if necessary for the payment of debts, sale.

And that this estate came into the possession of the husband, not as devisee, but as executor in trust for the payment of the debts of the testator. This ground is well taken.

It is provided by statute that lands shall be assets in the hands of the executor or administrator, and shall be deemed in his possession, and subject to his control for the payment of debts; he is empowered to rent the lands, to receive and account for the rents as assets, and, if necessary for the payment of debts, to sell the lands. Such sale, if made, would convey to the purchaser an absolute estate, free from dower, and, if free from dower, it must be because no dower existed at that time ; none could exist whilst the lands were so held by the executor, because the seizin, as well as a qualified estate, was in him, and not in the devisee (the husband). There was, therefore, no such estate in the husband of which the wife was entitled to dower. So held by this court at the present sitting, in the case of *Jay and Wife* v. *Tate et al.*

Independent of this position, but in connection with it, it may be well to consider the character of title held by James T. Armstrong (the husband of plaintiff), who claims title as devisee of his father's estate.

The estate of the father was, at the time of his death, incumbered with a mortgage lien for the payment of a debt to the Real Estate Bank, and, consequently, the father then held only the equity of redemption.

At the common law, the legal estate in the lands mortgaged would have vested in the mortgagee, but in equity, the equity of redemption is the ancient estate in the lands, without change of ownership.   Coote on Mort., p. 23.

Equity, adhering to the principles of the civil law, which considers the borrower the owner of the pledge until barred by judicial sentence, and looking to the substance, not the form of things, held the mortgagor, as in the civil law, the real owner of the land until decree of foreclosure, and possessed of it in his original right, and, consequently, that the equity of redemption was an estate in the land, and the person entitled to it the real owner of the land.   Such is the decision of this court in *State* v. *Lawson*, 6 Ark., 269; *Moore* v. *Anders*, 14 Ark., 637, and *Kannady* v. *McCanon*, 18 Ark., 170.

Such was the estate held by William Armstrong at his death, and such the estate devised.

At the time of the conveyance to Cockrill, the devisees were jointly in possession of the lands as executors.   In the execution of their trust as executors, they had a right to sell and convey the lands for the payment of the debts of the testator.   The fee, after the payment of the debts, was in them; the power of disposition in them.   By their sale as executors, and for the payment of the debts of the estate, they had power to convey the absolute estate, free from the charge of dower.   The sale was made in their trust capacity, and they are estopped from denying the necessity of the sale, or the character in which they sold.

If they were at that time seized of an estate of inheritance, the widow would not, of course, be estopped from asserting her rights, but the estate was then incumbered, so that the seizin and estate were not such as to entitle the widow to dower.   It may have been, and probably was in part, disincumbered by paying off the two last mortgage debts, but, by the same deed that

*Vol. XXXI.—38.*

effected this disincumbrance, the husband parted with his whole estate. This momentary disincumbrance, this seizin for an instant, is of no avail. 1 Scribner, Ch. 12, p. 261.

The deed from the executors and devisees is, in substance, as follows:

Francis W. Armstrong, James T. Armstrong and David I. Armstrong, as executors of the estate of William Armstrong, deceased, and in their individual rights, of the one part, and Sterling R. Cockrill of the other, for the consideration of $13,-000 cash, paid to Francis and James Armstrong, and in consideration of an agreement and undertaking of Cockrill to pay certain debts due from the estate of William Armstrong, deceased, consisting chiefly of the debts to McGregor, Alloway & Co., and William Wilson, set forth more fully in mortgages to them upon the property about which this contract of sale and purchase is made, two-thirds of these and other debts being assumed by said Cockrill, and one-third by David I. Armstrong. Now, this indenture witnesseth, that, for and in consideration of the foregoing, and other sufficient causes moving, the said James T., David I. and Francis W. Armstrong, as executors, and in their individual right, grant, bargain and sell, etc., to Cockrill and his heirs, forever, two-thirds of the real and personal estate known as the Armstrong place, one mile below Pine Bluff, fully described in the mortgage deed to Wilson, with the negroes described in the mortgage to McGregor, Alloway & Co., it being the intention of this indenture to convey all the right, title and interest which James T. and Francis W. have in said estate, being two-thirds, the other third belonging to David I. Armstrong. The said James T., Francis W. and David I. Armstrong convey all the right, title and interest, which they have power to do as executors of the estate of William Armstrong, deceased, and the said James T. and Francis W. Armstrong all

their right individually, being one-third each, but only warrant the title to the real and personal estate, and interest, against themselves and all persons claiming title by or through them.

(Signed,)          JAMES TROOPER ARMSTRONG,
                   F. W. ARMSTRONG,
                   D. I. ARMSTRONG,
          Executors of William Armstrong.

Construing this deed, and giving effect to it, according to the language used, and the powers and duties of the grantors, we must hold that two-thirds of the lands were sold, by all of the executors, all joining in the deed as such, for the purpose of paying the debts of the estate of William Armstrong ; the debts are so described in the deed.

Cockrill, in his deposition, swears that the sale of the land was made by the executors for the purpose of paying the debts ; the debts are the same described in the deed, with the addition of that due the Real Estate Bank, and amounted, all together, to about $65,000.

Looking to the answer of Cockrill and to deeds to Wilson and McGregor, Alloway & Co., a question may arise as to whether the debts described in the deed of mortgage were not contracted by the trustees in their trust capacity in carrying on the plantation, as under the provisions of the will the executors were required to keep the estate together as an entirety, and cultivate it until Frank, the youngest son, became of age, the time when the debts were contracted.

The fact that the estate of the testator was charged as security for the payment of the debts, the positive declarations of the executors to Cockrill that these were debts of the estate of William Armstrong, deceased, and they, as executors, were making sale of the lands to pay off the debts, added to the fact that the debts

are due by the estate of William Armstrong, fix the general pur-
pose of the sale, and it is probable that the $13,000 paid to
James and Frank Armstrong were given them for their interest
in the lands, to cover which they also convey as devisees in their
own right.

These executors had power to make such sale, and Cockrill
acquired an absolute title to the property. It was a sale to pay
the debts of the estate, and, like any other trust sale, is valid
until set aside for fraud.

Suppose all of these debts were not properly chargeable to the
estate of William Armstrong, deceased, and the sale had been in
fraud of the rights of this widow, certainly she would be re-
quired, by proceedings in equity, to set aside the sale for fraud,
and should attempt this, and establish the abuse of trust by the
executors.

There can be no doubt but that the mortgage, contracting a
lien upon the land, before the marriage of plaintiff, to Wilson,
for $10,000, and the debt of the Real Estate Bank for $25,000,
was a charge upon the land, two-thirds of which were paid by
Cockrill, and that, before he could be disturbed in his title, the
widow would be required to refund to him the money paid and
the interest upon it.

These debts were an incumbrance upon the estate, out of which
she claims dower; and it is a rule that where the holder of an
equity of redemption has redeemed the land from the mortgage
incumbrance, the lien of which was senior to the dower interest
of the widow of the mortgagor, she is endowed only of the
equity of redemption. Scribner, vol. 1, 568.

After a careful consideration of the case in its several aspects,
we must hold that the plaintiff is not entitled to dower.

*First*—Because the land was sold by the executors of the estate
of William Armstrong to pay the debts of the estate, which were

an incumbrance upon the title of the husband, under which defendant, Cockrill, acquired an absolute title to the land, free of the charge of dower.

*Second*—Because the husband was never at any time seized of an estate of inheritance in said land; that his right to seizin was arrested and vested in him as executor by force of the statute, and that he held as executor until he parted with his equity of redemption, and all other estate by force of his deed to Cockrill, who, under such title, entered into actual possession of the land, and at the time of the death of the husband, was seized both in deed and in law.

Let the judgment and decree of the court below be reversed, and set aside, and suit dismissed.