## WEBB v. WEBB.

### Opinion delivered January 19, 1914.

1. WILLS—RULE OF CONSTRUCTION.—A will should be so construed as to give effect to what appears to be the intention of the testator in view of all the provisions of the will. (Page 58.)

2. WILLS—RULE OF CONSTRUCTION—RESTRICTION OF GENERAL WORDS.— General words in a will may be restricted by particular words, to less than their natural import, when such restriction is justified by the context. (Page 59.)

3. WILLS—RESTRICTION OF GENERAL WORDS.—The words "whatever other property I may have," construed to apply only to personal property, when no intention on the part of the testator to devise real estate appears. (Page 59.)

4. WILLS—EFFECT AND OPERATION—DATE.—In the absence of language showing a contrary intention, a will speaks from the death of the testator; but in order to ascertain the intention of the testator from the language used by him in the will, the will is to be construed as of the date of its execution. (Page 61.)

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; reversed.

STATEMENT BY THE COURT.

This suit was brought by appellee in the Sebastian Chancery Court, for the Fort Smith District, against

appellants to set aside certain deeds executed between
the parties in the division of the estate of one Charles
Webb, deceased, the husband of the appellee, and the son
and brother of the appellants. Appellee set up, in short,
that the deeds which she sought to set aside were all exe-
cuted through fraud practiced upon her by the appel-
lants, and through and under a misapprehension by her
of her rights in the premises. She alleged that she was
the owner of the real estate involved under the follow-
ing will:

"In the name of God, Amen: I, Charles Webb, being
of sound mind and good health, do hereby declare this
to be my last will and testament, and it is my desire that
this will be carried out to the letter.

"To Miss Louise Jannett, my affianced wife, and one
that has been my friend when every one else has turned
me down, I give all my personal property consisting of
whatever moneys I possess, horses, buggies, clothes, fur-
niture and whatever other property I may have, includ-
ing the insurance policy for one thousand dollars, I now
hold in the Fraternal Home, headquarters at Hannibal,
Mo., and it is my desire that the Noble Grand of Fort
Smith Lodge 19, I. O. O. F., see that this policy is col-
lected with the least expense possible, and paid to the
above mentioned Louise Jannett.

"Whatever property I may have coming to me from
my father's and mother's estate at Asheville, N. C., I
want my sister Estell to have to do with as she may
deem best.

"Given under my hand this 30th day of Novem-
ber, 1902.                                    "Chas. Webb."

She set out in detail the acts constituting the alleged
fraud practiced upon her, which it is unnecessary to
specify here.

The appellants denied specifically the allega-
tions of fraud against them, and set up, in sub-
stance, that after the death of Charles Webb it was as-
certained by the respective parties to this litigation that
Webb had executed the will above set forth; "that legal

advice was sought as to the rights of the plaintiff, and the rights of the mother and brothers and sisters of the deceased under said will and under the law, and as fully as defendants were advised of these matters the plaintiff was also advised; that, among other things, plaintiff was advised that she could not hold all of said real estate under said will; that under the law the mother and brothers and sisters of deceased would be entitled to one-half of it; * * * and after these matters had been gone over and fully discussed, * * * it was agreed between the plaintiff and defendants that she should take all the personal property, including the insurance referred to in said will, and that the real estate should be divided between plaintiff and defendants, and after discussing the matter fully said division of the real estate was agreed upon and mutual deeds were executed between the parties for the considerations expressed in said deeds and for the purpose of enabling each party to convey and make good title in the event either party desired to make a sale of any of said property; that said transaction was fully understood and entirely satisfactory both to the plaintiff and the defendants; that plaintiff expressed herself as being pleased with the settlement of the estate, and requested that the same be filed for record for her at her expense, and the same was accordingly done.'' The prayer of the answer was that the settlement as thus made be in all things sustained.

The court sustained a demurrer to the answer, and the appellants (defendants) declined to plead further. The court found that appellee, under the will set up in the complaint, was the owner of the property in controversy, and that the deeds sought to be cancelled were obtained through fraud and without consideration, and proceeded to set aside the conveyances executed in pursuance of the alleged settlement, thereby granting to the appellee the relief sought in her complaint. The appellants duly prosecute this appeal.

*T. S. Osborne* and *Read & McDonough*, for appellant.

1. Under the recognized rule for construing wills,

the devise to Louise Janett is confined and limited to personal property. It reads, "to Miss Louise Janett, my affianced wife, * * * I give all my *personal* property," etc., and "whatever other property I may have, including the insurance policy," etc.

The word "personal" limits "and whatever other property I may have." 124 N. Y. 388; 30 Am. & Eng. Enc. of L. 670, 671; *Id.* 668; 12 Ga. 155; 62 Conn. 393.

2. Appellee is bound by the settlement between the parties, and the conveyances executed pursuant thereto should stand.

"Where the parties themselves have construed a will and acted thereunder, parting with valuable rights, the courts will enforce the construction adopted." 30 Am. & Eng. Enc. of L. 637.

*Prentiss E. Rowe* and *Geo. W. Dodd,* for appellee.

1. The intention of the testator must govern in the construction of a will. To it all else must yield, unless that intention is contrary to some positive rule of law or to public policy. 105 Ark. 558; 40 Cyc. 1386; 30 Am. & Eng. Enc. of L. (2 ed.), 661; 13 Ark. 573; 31 Ark. 580; 73 Ark. 56; Remson on Preparation and Contents of Wills, 343 *et seq.*; 1 Jarman on Wills, § 33, and note.

As a rule, wills are to be construed as speaking from the death of the testator, and must be construed as operating upon his estate then existing. 40 Cyc. 1424; 105 Ark. 558.

The word "property" is a comprehensive term, and includes all kinds of property, whether real or personal. To say that the word "personal" in the will, limits the words "whatever other property I may have," is a strained construction not in conformity to the evident intention of the testator. Kirby's Dig., § 7804; 32 Cyc. 647; 23 Am. & Eng. Enc. of L. (2 ed.), 259; 40 Cyc. 1526. The presumption that a testator when he executes a will intends to dispose of his whole estate, is overcome only where the intention of the testator to do otherwise is plain and unambiguous, or is necessarily

implied. This presumption will prevail unless the language of the will compels a different construction. 30 Am. & Eng. Enc. of L. 668; 40 Cyc. 1409; 90 Ark. 152; 118 S. W. 404; 105 Ark. 558; 104 Ark. 439.

The intention of a testator is not to be determined by the construction of a legatee, even though his construction is against his own interests. 30 Cyc. 673, and notes 4 and 5.

2. Appellee is not concluded by the settlement set up in the answer.

WOOD, J., (after stating the facts). Counsel for appellee are correct in saying that the decision of this case turns upon the construction of the will. This court early announced that "The leading rule in the construction of wills, is to give effect to what appears to be the intention of the testator in view of all the provisions of the will." See *Campbell* v. *Campbell*, 13 Ark. 513-518; *Cockrill* v. *Armstrong*, 31 Ark. 580; *Bloom* v. *Strauss*, 73 Ark. 56; *Galloway* v. *Darby*, 105 Ark. 558. See, also, 40 Cyc. 1386; 1 Jarman on Wills, 33, and note; 30 A. & E. Ency. Law (2 ed.), 661.

Lord Coke once observed: "Wills and the construction of them do more to perplex a man than any other learning." "But," he adds, "I have learned this good rule, always to judge in such cases as near as may be, according to the rules of law, and in so doing I shall not err; and this is a good and sure rule, if a will be plain, then to collect the meaning of the testator out of the words of the will." 2 Bulstrode Reps. 130.

Mr. Jarman, in his excellent work on Wills, says: "Though the intention of testators, when ascertained, is implicitly obeyed, however informal the language in which it may have been conveyed, yet the courts, in construing that language, resort to certain established rules, by which particular words and expressions, standing unexplained, have obtained a definite meaning; which meaning, it must be confessed, does not always quadrate with their popular acceptation. This results from the intendment of law, which presumes every person to be ac-

quainted with its rules of interpretation, and conse-
quently to use expressions in their legal sense, *i. e.*, in the
sense which has been fixed by adjudication to the same
expressions occurring under analogous circumstances; a
presumption which, though it may sometimes have dis-
appointed the intention of the testator, is fraught with
great general convenience; for, without such acknowl-
edged standard of interpretation, it would have been im-
possible to rely with confidence on the operation of any
will not technically expressed, until it had received a ju-
dicial interpretation. * * * It is, therefore, necessary to
remind the reader, that the language of the courts, when
they speak of the intention as the governing principle,
sometimes calling it 'the law' of the instrument, some-
times the 'pole star,' sometimes the 'sovereign guide,'
must always be understood with this important limita-
tion—that here, as in other instances, the judges submit
to be bound by precedents and authorities in point; and
endeavor, as we have seen, to collect the intention upon
grounds of judicial nature, as distinguished from arbi-
trary occasional conjecture.''

When the words, ''whatever other property I may
have,'' as used in the second paragraph of the will, are
construed according to established rules of interpretation
that would be adopted to ascertain the meaning of those
words if used in other instruments, there is no doubt but
what they must be held to mean personal property and be
restricted to such property; for the general words ''what-
ever other property'' are preceded by the specific words
''personal property,'' and the enumeration of specific
articles of personal property, and are also followed by
specific words describing the particular kind of personal
property, all of which, according to acknowledged stand-
ards of interpretation, limit the broader general words
to property of the same kind or character as that de-
scribed by the particular words with which the general
words are associated. The rule applicable here is accu-
rately stated in 30 Enc. Law (2 ed.), under the title
''Wills,'' as follows: ''General words may be restricted

by particular words 'to less than their natural import when both are used in a will, and such restriction is justified by the context, as where devises or bequests are made by words of enumeration which are coupled in the same clause with words of general description. In such case, the latter may be confined to matters *ejusdem generis.*" See 30 Enc. Law, p. 670 and note 2, p. 671 and note 1.

There are no words in this will indicating an intention upon the part of the testator to devise to appellee any real estate. On the contrary, as we construe the words of the second paragraph of the will, it was the intention to give appellee only his personal property.

In ascertaining the meaning of the words "whatever other property I may have," as used in the second paragraph of the will, we find nothing in the context to warrant us in departing from well known rules of construction that would be applied to find out the meaning of these words if used in other instruments in analogous cases. When the ordinary rules for the construction of instruments are observed, we are of the opinion that the intention of the testator, as is plainly expressed in his will, was only to give to the appellee the personal property that he then possessed, or of which he might be possessed at the time of his death, except, however, such as might come to him from his father's or mother's estate at Asheville, N. C. Certainly there is nothing to indicate that he intended to devise to her any real estate. When proper rules of construction are applied this intention of the testator is so plain that the court is not warranted in looking to the surrounding circumstances to deduce an intention different therefrom. But if we should consider the facts as disclosed by the pleadings, revealing the situation and circumstances of the testator and the appellee as beneficiary under the will, still there is nothing in the surrounding circumstances of the parties at the time the will was executed to indicate an intention to give to the appellee the real estate in controversy.

As to the effect and operation of a will, as a general rule, in the absence of language showing a contrary

intention, it speaks from the death of the testator. But when the purpose is to ascertain what the intention of the testator was from the construction of the language used by him in the will, then the will should be construed as of the date of its execution. See 40 Cyc. 1424-B; *Maupin* v. *Goodloe*, 6 T. B. Monroe (Ky.) 399; *Gray, State Treas.*, v. *Hattersley et al.*, 50 N. J. Eq. 206, 24 Atl. 721. In *Galloway* v. *Darby, supra,* we said: "In the construction of wills, there is always a presumption against partial intestacy unless such intention clearly appears from the language used in the instrument." Citing *Booe* v. *Vinson*, 104 Ark. 439. See, also, *Gregory* v. *Welch*, 90 Ark. 152; *Patty* v. *Goolsby*, 51 Ark. 61. But in *Patty* v. *Goolsby, supra*, and other cases in which this rule was announced, the language of the wills construed showed a purpose to dispose, by will, of the entire estate of the testator. There is nothing in the will in the case at bar indicating an intention upon the part of the testator, as we have stated, to give to the appellee anything more than personal property, and there is no declared purpose of disposing of his entire estate, real and personal. Therefore, there is nothing in the facts of this record to warrant appellee in invoking the doctrine of presumption against partial intestacy, and that doctrine as announced by this court in the cases relied on by appellee is not applicable. The plain language of the will itself precludes its application here.

The court therefore erred in its construction of the will. It is alleged in the complaint that the fraud against appellee consisted in the misrepresentation of the appellants as to the effect of the will, and that it was through this fraud that the settlement was effected, and it is not alleged in the complaint that any other fraud was perpetrated upon her. The answer alleges in detail the facts concerning the representations as to the effect of the will, which the demurrer admits. There was no fraud in these representations. We are therefore of the opinion that the settlement made between appellants and the appellee and the conveyances made in pursuance thereof

should be confirmed, and that the court erred in cancel-ing these conveyances, and in divesting the title to the lands in controversy out of the appellants, and vesting the same in the appellee. The judgment is therefore re-versed and the cause will be remanded with directions to confirm the settlement, and to reinstate the conveyances made in pursuance thereof, and to divest the appellee of and invest the appellants with the title to the lots in con-troversy, as described in the pleadings and the decree of the trial court.