GODARD *v.* GODARD.

4-7998                                    197 S. W. 2d 554

Opinion delivered November 25, 1946.

*John W. Nance,* for appellant.

*Sullins & Perkins,* for appellee.

HOLT, J. January 14, 1935, J. M. Godard died testate. He had been twice married. His first wife had borne him four children, one of whom, Clem, appellee, now 55 years of age, had been an incompetent since childhood. Appellant, Fannie Godard, was his second wife, and to this union were born two children, Albert Ray and Joe Edward Godard, who were minors at the time of the testator's death.

The will provided: "I, J. M. Godard, of Clifty, Madison county, Arkansas, declare the following to be my last will and testament, made this 5th day of May, 1933: I give to each of my children, I. B. Godard, Geretty B. Godard Cook, Lenora A. Godard Bone, Clem Godard, Albert Ray Godard and Joe Edward Godard One Dollar ($1.00) each. Reposing full confidence in the love, affections and respect that my beloved wife Fannie Godard has for me and my children, I give to her all of my real and personal estate, after paying all of my debts and funeral expenses, absolutely to do as she sees fit, except the real property at her death is to go to Albert Ray Godard and Joe Edward Godard, with the understanding that my wife Fannie Godard, Albert Ray Godard and Joe Edward Godard are to see after and support Clem Godard as long as he lives."

At the time of his death, the testator possessed personal property of the value of less than $300 and a homestead of 33 acres, upon which he and his family resided.

Following his death, his widow, Fannie Godard, paid all funeral and medical bills and filed the will for pro-

bate, and thereafter took no further steps toward administering the estate except as noted.

For approximately ten years following the testator's death, Clem continued to live in the home with his stepmother and her two minor children, Albert Ray and Joe Edward, as a member of the family and was supported during this time by them.

Some time in 1943, Albert Ray went into the armed forces and Joe Edward followed him into the service about one year later. After they left the home, their widowed mother was left alone to care for Clem whose mental condition had grown steadily worse and had become so bad that it was dangerous and unsafe for Mrs. Godard to remain alone with him.

About this time the farm homestead of 33 acres was sold to Mitchell Van Hook and wife for a cash consideration of $2,750, and the court below, by consent of all parties hereto, entered a consent decree approving the sale and confirming title in the Van Hooks.

Mrs. Godard took possession of $750 of the proceeds from this sale and deposited the remainder, $2,000, in a bank in Huntsville, Arkansas, where it now remains impounded by court order.

Appellee, Lenora A. Bone, filed the present suit March 10, 1945, in which, as Clem's guardian, she alleged that the homestead property was willed in trust for the benefit of Clem; that under the will appellants are trustees of the estate; that this property is chargeable with Clem's support for the remainder of his life, and prayed accordingly. Appellants interposed, in effect, a general denial.

The trial court found that the $2,750 derived from the sale of the homestead, *supra*, "is subject to such disbursement and adjudication between and among the parties hereto as would have been applied to the lands involved if same had not been sold . . . ; that defendant, Fannie Godard, has received and applied to her own uses $750 of said $2,750; that said $2,750 is subject to

such uses and enjoyment as would have been enjoyed by said Fannie Godard in said real estate in the event same had not been sold; that said $2,750 is subject to such burden as would have rested upon said real estate and the title thereto for the support of plaintiff, Clem Godard, for and during his lifetime . . . ; that the interest of defendant, Fannie Godard, in said $2,750 is $1,191.-54; that interest of plaintiff, Clem Godard, therein is all of the remainder of said amount, being $1,558.46 . . . ; that defendant, Albert Godard, and defendant, Joe Edward Godard, are entitled to such residue or remainder of said $1,558.46, as may exist, if any there be, at the death of plaintiff, Clem Godard . . . ; that by reason of the incompetency of said Clem Godard, that such fund inuring to his benefit should be administered by a trustee,'' with directions to administer said sum of $1,558.46 for the support of Clem during the remainder of his life or until the fund is exhausted.

This appeal followed.

For reversal, appellants argue: (1) That the essential elements of a trust are lacking in the will, *supra,* that the essentials of a precatory or implied trust do not appear. (2) That ''appellee's (Clem's) equity, if any he had in the property, is exhausted, . . . if proper credit is allowed to appellants for the ten years support previously furnished'' Clem. (3) That the court failed to consider Mrs. Godard's homestead right in the 33 acre farm property, and (4) that Mrs. Godard had the right, under the will, to sell the homestead and reinvest the proceeds in a home near her brother and sister in Rogers, and quoting from appellants' brief: ''The only obligation imposed upon them, if any at all, is to provide support to Clem. Therefore, we insist that the Court erred in its judgment in taking the proceeds of the sale of the farm from the possession of appellants.''

## (1)

At the outset, it becomes necessary to construe the language used by the testator in the will, *supra,* to arrive at his intention, and this we must do as of the date of its

execution. In *Webb* v. *Webb,* 111 Ark. 54, 163 S. W. 1167, this court said: ''As to the effect and operation of a will, as a general rule, in the absence of language showing a contrary intention, it speaks from the death of the testator. But when the purpose is to ascertain what the intention of the testator was from the construction of the language used by him in the will, then the will should be construed as of the date of its execution,'' and in *Wooldridge* v. *Gilman,* 170 Ark. 163, 279 S. W. 20, this court, through Mr. Justice HART, again announced the general rule of construction and interpretation of wills in this language: ''The primary rule of construction in the interpretation of a will is to accertain the intention of the testator, according to the meaning of the words he has used, deduced from a consideration of the whole will and a comparison of its various clauses in the light of the situation and circumstances which surrounded the testator when the instrument was executed. *Bloom* v. *Strauss,* 73 Ark. 56, 84 S. W. 511; and *Colton* v. *Colton,* 127 U. S. 300, 8 S. Ct. 1164, 32 L. Ed. 138.

''No hard and fast rule can be laid down to determine when precatory words will be construed to create a trust; but the intention is to be gathered in each case from the general purpose and scope of the instrument. Whether precatory words impose an imperative obligation on legatees, or are but the expression of a hope or recommendation, the carrying out of which is left to the discretion of such legatees, must now, according to the weight of authority, be determined by the language actually used, the context, and the consideration of the will as a whole.''

We think it clear by the language used that the testator intended at the time he wrote the will, *supra,* that his widow, Fannie Godard, should have a life estate in the property here involved, with the remainder at her death to his two sons, Albert Ray and Joe Edward, but that when he made the further provision that this property should go to his wife and two sons ''with the understanding that my wife, Fannie Godard, Albert Ray Godard and Joe Edward Godard are to see after and support

Clem Godard as long as he lives," he used precatory words, creating a trust, imposing a burden on this property for Clem's benefit and protection during his life, and, therefore, that they became trustees for this purpose. It seems to us that it would be difficult to reach any other interpretation or conclusion from the above language which the testator used in the circumstances presented by this record.

All agree that at the time the will was written, and until the testator's death, Clem was incompetent, had been since infancy, and had had the care and protection of a good father.

No one knew Clem's needs better than his own father and it occurs to us that this father's intention to provide after his death, for a continuation of the protection he had so long given to his unfortunate son, whom he knew, in all probability, must stumble through life with a crippled mind, was clearly and unmistakably expressed in precatory words creating the trust charging the property for this purpose.

The principles of law announced in the very early case of *Cockrill* v. *Armstrong,* 31 Ark. 580, we think, apply with equal force here. There, the will provided: "I hereby bequeath and devise all of my estate, real and personal, including all my effects of every description whatever, subject to the limitations herein set forth, to my sons James Trooper Armstrong, David I. Armstrong and Frank Will. Armstrong, whom I constitute and appoint as my sole executors." The testator also left three daughters whom he mentioned in the will, but to whom he gave nothing, and in the third paragraph of the will appears this language: "Having full confidence in my sons aforesaid, and in their disposition to deal justly and liberally, I leave to them to make proper and suitable provision for their sisters, Susan, Margaret and Nancy."

This court, in construing the meaning of the words in the third paragraph, *supra,* held (headnote 4): "That it was the intention of the testator to charge the estate

in the hands of the sons with the maintenance and suitable provision for the daughters," and in the body of the opinion said: "It is not necessary to use the word trust, or to direct property to be held in trust. But if, from the language used, in view of the whole disposition of the estate, an intent and purpose may be reached which implies a trust, a trust will be implied. Perry says: 'Implied trusts are those that arise when trusts are not directly or expressly declared in terms, but the courts, from the whole transaction, and the words used, imply or infer that it was the intention of the parties to create a trust. Courts seek for the intention of the parties, however informal or obscure the language may be; and if a trust can fairly be implied from the language used, as to the intention of the parties, the intention will be executed, through the medium of the trust.' "

We consider the other three points together. The great preponderance, if not the uncontradicted evidence, shows that Mrs. Godard elected to claim, and did take or claim, under the will. She not only filed the will for probate, but proceeded to act under its provisions for approximately ten years thereafter without complaint. She testified: "Q. You took charge of all the other property—that is what the will said? A. Yes, sir. Q. In other words, you were trying to carry out the will—a part of that was to keep up Clem—you and the boys were trying to carry it out? A. Yes, sir. Q. I believe you got $2,750 for the place—$2,000 in the bank and you have the other $750? A. Yes, sir, I got it."

Having so elected, Mrs. Godard is bound by its provisions which, as we have indicated, gave her a life estate in the 33 acre tract of land, and since by agreement of the parties and the court's approval, this land has been sold and converted into cash in the amount of $2,750, she would be entitled, as the trial court found, to a life estate in the proceeds of this sale, which when reduced to its present value, in accordance with the rule announced by this court in the recent case of *Dowell* v. *Dowell,* 209 Ark. 175, 189 S. W. 2d 797, amounted to $1,191.54.

Under the terms of the will, Albert Ray and Joe Edward Godard were to receive no interest in the land until their mother's death, and before and after the death of Fannie Godard, a burden was imposed upon this real estate for the care of Clem during his lifetime. The finding of the trial court that the interest of Clem Godard in the proceeds from the sale of the land amounted to $1,558.46 after deducting the value of Mrs. Godard's life estate, *supra*, and that Albert Ray and Joe Edward Godard were entitled to whatever might remain of the $1,558.46 allotted to Clem at his death, was correct.

Appellants' contention that whatever equity Clem might have had in the property had been exhausted is untenable for the reason that the will, having created a trust and thereby imposed a charge on the property for Clem's support, that trust and charge are continuous and remain so long as there is any property out of which Clem's support may be maintained.

On the whole case, we find no error, and accordingly. the decree is in all things affirmed.