### Cook *v.* Worthington.

#### Opinion delivered January 11, 1915.

1. Wills—uncertainty in terms.—Uncertainty as to either the subject or object of a devise in a will is fatal to its validity.

2. Wills—uncertainty.—Where the intended subject-matter of disposition consists of an indefinite part or quantity, the gift necessarily fails for uncertainty.

3. Wills—rule of construction—intention of testator.—The rule on the construction of wills is to give effect to what appears to be the intention of the testator, in view of all the provisions of the will.

4. Wills—construction—ambiguity—oral evidence—intention of testator.—In the construction of wills, the intention of the testator must be gathered from the language, when unambiguous, used in the will itself, and not from oral testimony.

5. Wills—construction—intention of testator—transposition of words.—In the construction of wills, when there is an obvious clerical misprision in the use of a word, or when the words, by reference to the context, can better effectuate the intention of the maker by trasposition to other parts of the instrument without destroying the sense, or where there is an obvious omission of a

word or words, shown by reference to the others used, then the rules of construction will permit the court to transpose or to supply these in order to effectuate the manifest purpose of the maker of the instrument, when ascertained from the instrument taken as a whole.

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; affirmed.

### STATEMENT BY THE COURT.

W. H. Cook, a citizen of Lonoke County, Arkansas, died on the 13th day of February, 1913. A few days after his death the following instrument (omitting merely formal opening and conclusion) was offered for probate as his last will and testament, towit:

"Section One. I do hereby constitute and appoint my friend L. S. Gartrell to be the sole administrator of my last will, directing my said administrator to pay all my just debts and funeral expenses and the legacies given, out of my estate.

"Section Two. After the payment of my said debts and funeral expenses I give to each of my nephews, Mack and DeWitt Worthington, five dollars each, and to my niece, Wilmer Agnes Fisher, *nee* Worthington, five dollars, and to my cousin, T. D. Cook, and my friends, Willie and Cleveland Short to the aforesaid T. D. Cook and Willie Short and Cleveland Short to share, *to share* and share alike."

The will was admitted to probate before the probate court, and on appeal the circuit court found "that said will, on its face, is null and void and of no effect for uncertainty," and set aside the judgment of the probate court allowing the will to be probated. The appellants duly prosecuted this appeal.

*Charles A. Walls,* for appellants.

1. The intention of the testator should govern in the construction of the will, and where that intention may be gathered, either expressly or by necessary implication, from the language of the will, such construction should be given as best comports with the purposes and objects of the testator. 3 Peters, 346; 40 Cyc. 1388-1396; 13 Ark.

513; 31 Ark. 580; 98 Ark. 561; 104 Ark. 439; Page on Wills, 460; Gardner on Wills, 369.

In order to effectuate the intention of the testator, which is clearly apparent but which has been defectively expressed in the will, the court may supply such words or phrases as it is evident the testator intended to use. 40 Cyc. 1399-1402.

2. The testator will be presumed by law to have intended to dispose of his entire estate, and the law favors a will that will vest title as early as possible. 104 Ark. 439; 90 Ark. 152.

3. The words "to share *to share* and share alike" indicate an intention on the part of the testator that T. D. Cook and Willie and Cleveland Short should have the remainder of the estate, in equal parts *per capita,* after the payment of the testator's debts, funeral expenses and the legacies mentioned in the other part of the will. 29 N. Y. 32; 93 N. C. 362; 66 N. Y. Supp. 218; 49 Mass. 450; 62 Ill. 417; 70 N. Y. 512.

*J. W. & J. W. House, Jr.,* and *A. F. House,* for appellee.

1. The purported will is void. The intention of the testator must be obvious from the language of the will. "Courts are not at liberty in the construction of wills to travel outside and seek evidence of the testator's intention." 91 N. E. 507. The intention which is to be sought for in the construction of a will is not that which existed in the mind of the testator, but that which is expressed by the language of the will itself. *Id.;* 23 Ark. 378; 66 Me. 360; 32 Atl. 316; 68 N. E. (Ill.) 515; 111 Ill. App. 207; 20 N. E. 779; 67 Barb. 501; 2 How. Prac. 76; 83 Va. 724; 21 S. E. 464.

2. The language of the second clause of the instrument is so ambiguous that it is impossible to determine the testator's intention with any degree of certainty. Any attempt to construe it in a certain way would be mere conjecture, which is never allowed in the construction of wills. "Words and limitations may be transposed, supplied or rejected when the immediate context or the gen-

eral scheme of the will warrants it, but not merely on a conjecture or hypothesis of the testator's intention." 26 Ind. 511; 3 Metc. (Ky.) 155; Fed. Cas. No. 17179.

3. The will, if interpreted according to appellants' contention, would have the effect to disinherit persons of the testator's own blood, and cast his property upon strangers; and the courts will not indulge in strained or doubtful construction to accomplish this end. 12 Ga. 155; 56 Am. Dec. 451; 93 N. Y. 295; 2 Grant, Cas. 240; 35 Pa. 393; 116 Pa. 500; 9 Atl. 936; 5 Pa. Dist. Orph. Ct. 285; 26 N. E. 56; 127 Ind. 276; 26 Pa. Sup. Ct. 443; 36 S. E. 364; 48 W. Va. 208; 47 Ind. 341; 5 Pa. Sup. Ct. 336.

WOOD, J., (after stating the facts). (1) The will, so far as appellants are concerned, is void for uncertainty.

"To the validity of every disposition," says Mr. Jarman, "as well of personal as real estate, it is requisite that there be a definite subject and object; and uncertainty in either of these particulars is fatal." 1 Jarman on Wills, p. 454, chap. 14.

(2) Now an inspection of the sections of this *will* will discover that no devise or bequest of all or any portion of the estate of Wm. H. Cook was made to the appellants. After giving $5 each, the language of section two does not give or bequeath to the appellants the remainder of the estate and have them to share alike in that. It is manifest from the whole instrument that the deceased did not intend to will to appellants his entire estate, for it provides for the payment of debts and funeral expenses, and a legacy of $5 each to his niece and his two Worthington nephews. So, it could not be construed that W. H. Cook intended that the appellants should share and share alike in his whole estate. No language is used in the instrument by which it can be ascertained what portion of his estate W. H. Cook intended to go to the appellants. The will could reasonably be construed as indicating an intention upon the part of the deceased to will to appellants an interest in his estate. This is shown by the use of the words "to share," which means

"to partake of," "enjoy with others," "to have a portion of." Webster's Dictionary, "Share." And it could be also construed that he meant that the appellants should all have an equal share, or like share, but as to what portion or as to what character of the estate, whether real or personal, is not mentioned in the instrument, and it is impossible to ascertain from the language employed as to what the intention of the maker of the so-called will was in these particulars. The subject of the alleged bequest, in other words, is too vague and indefinite to constitute a valid will. "Where the intended subject-matter of disposition consists of an indefinite part or quantity, the gift necessarily fails for uncertainty." 1 Jarman on Wills, p. 457.

Now, it would be entirely within the province of the court, in arriving at the intention of the deceased Cook, to transpose the words "out of my estate" from the first section to the second section, and have the second section read, "to my cousin, T. D. Cook, and my friends, Willie Short and Cleveland Short, share and share alike out of my estate," if such transposition would discover the intention of the testator. But even with the words "out of my estate," so transposed, the subject of the alleged disposition would be in as hopeless confusion as ever because of vagueness and uncertainty both as to what portion as well as the character of the estate was intended to be disposed of. If the words "out of my estate" were so transposed we might say that it was the intention of W. H. Cook that appellants should share and share alike "out of his estate." We know from dispositions made of other portions of the estate that he did not intend for appellants to share the whole of the estate. Then, what portion did he intend that they should "share and share alike?"

(3) Over and over again we have said that the rule in the construction of wills is to give effect to what appears to be the intention of the testator in view of all the provisions of the will. See *Campbell* v. *Campbell,* 13 Ark. 513; *Cockrill* v. *Armstrong,* 31 Ark. 580; *Bloom* v.

*Strauss,* 73 Ark. 56; *Parker* v. *Wilson,* 98 Ark. 561; *Booe* v. *Vinson,* 104 Ark. 439; *Galloway* v. *Darby,* 105 Ark. 558; *Webb* v. *Webb,* 111 Ark. 54; *Gist* v. *Pettus,* 42 Ark. Law Rep. 406.

(4-5) But this court has held steadily to the rule, which is sustained by the authorities generally, that the intention of the testator must be gathered from the language, when unambiguous, used in the instrument itself, and not from oral testimony. See *Robinson* v. *Bishop and Wife,* 23 Ark. 378. Where there is an obvious clerical misprision in the use of a word, or where the words, by reference to the context, can better effectuate the intention of the maker by transposition to other parts of the instrument without destroying the sense, or where there is an obvious omission of a word or words, shown by reference to the other words used, then the rules of construction will permit the court to transpose or to supply these in order to effectuate the manifest purpose of the maker of the instrument, when ascertained from the instrument taken as a whole. But further than this the court will not go.

The rule and the reason for it is stated by Mr. Jarman as follows: "The most unbounded indulgence has been shown to the ignorance, unskilfulness and negligence of testators; no degree of technical informality, or of grammatical or orthographical error, nor the most perplexing confusion in the collocation of words or sentences, will deter the judicial expositor from diligently entering upon the task of eliciting from the contents of the instrument the intention of its author, the faintest traces of which will be sought out from every part of the will, and the whole carefully weighed together; but if, after every endeavor, he finds himself unable, in regard to any material fact, to penetrate through the obscurity in which the testator has involved his intention, the failure of the intended disposition is the inevitable consequence. Conjecture is not permitted to supply what the testator has failed to indicate; for as the law has provided a definite successor in the absence of deposition,

it would be unjust to allow the right of this ascertained object to be suspended by the claim of any one not pointed out by the testator with equal distinctness. The principle of construction here referred to has found expression in the familiar phrase, that the heir is not to be disinherited unless by express words or necessary implication." 1 Jarman on Wills, p. 453. See also, 2 Jarman on Wills, pp. 2205-6.

And, as expressed by Mr. Jarman in another place, in arriving at the testator's intention as the governing principle, "the judges submit to be bound by precedents and authorities in point; and endeavor, as we have seen, to collect the intention upon grounds of a judicial nature, as distinguished from arbitrary occasional conjecture." 2 Jarman on Wills, pp. 2205-6, quoted in *Webb* v. *Webb*, *supra*. Other authorities to the same effect are cited in the brief of counsel for the appellees.

Our conclusion is that the instrument under review was void as to the appellants, and that is all we are called upon to decide. The judgment is therefore affirmed.

Kirby, J., dissents.