### BROCK *v.* TURNER.

#### Opinion delivered February 14, 1921.

1. WILLS—PRESUMPTION AGAINST PARTIAL INTESTACY.—The presumption against partial intestacy, though not controlling, must always be taken into account when the language employed in a will is so ambiguous as to require construction.

2. WILLS—AFTER-ACQUIRED REAL ESTATE.—A wife's will, leaving to her husband "all of my personal property and real estate as follows, towit, describing a certain tract, also all chattel property," etc., *held* to apply to real estate acquired after the execution of the will.

3. WILLS—AFTER-ACQUIRED PROPERTY.—Where a will manifests a purpose to dispose of after-acquired property, such effect will be given to it.

Appeal from Polk Circuit Court; *James S. Steel,* Judge; affirmed.

*Minor Pipkin,* for appellants.

The will does not show an intent on the part of the testatrix to give her husband, J. F. Marshall, or any one else the land acquired after executing the will. The intention as shown by the words used should be carried out. 90 Ark. 152. But construction is unnecessary here, as there is no ambiguity, nor inconsistent or repugnant clauses. 124 Ark. 548. The testatrix had in mind no other land than that described in the will, and only in-

tended a gift of lands then owned by her and no other. 68 Conn. 177. It is clear the testatrix died intestate as to the after-acquired lands. It was her intent to devise only the lands described in the will and this intent should be effectuated. 116 Ark. 328.

The presumption against partial intestacy is not applicable here. 111 Ark. 54; Page on Wills 545; 142 Ill. 214.

*Norwood & Alley,* for appellees.

The will shows an intent to dispose of all the property of which she died seized and to make her husband the sole beneficiary and appellees holding under him are the legal owners, and the lower court so held and properly.

The will should be construed to cover after-acquired property. It was the intention to dispose of the whole estate existing at time of death. 51 Ark. 61.

The presumption is against partial intestacy. 51 Ark. 61; 90 *Id.* 152; 104 *Id.* 448; 115 *Id.* 9. The words ''the remainder and residue of my money'' in a will made by one who had no real estate at the time will pass after-acquired realty where the will shows an intent not to die intestate and to exclude the heirs except as they were given legacies. 11 L. R. A. 767. This case is not like 111 Ark. 54.

The purpose of construction of a will is to ascertain the intention of the testator from the language used, and when ascertained, it must prevail. 104 Ark. 445. There was no children, and it is clear she intended to leave what she had to her husband, and the court so held.

SMITH, J. The decision of this case turns upon the construction of the following will:

''I give, devise and bequeath to my beloved husband, John F. Marshall, all of my personal property and real estate, as follows, towit: Forty acres, being the southeast quarter of the northwest quarter of section eleven (11), township four (4), range 32 west, containing sixty acres, more or less. Also all chattel property

of any kind, including money on hand, notes, household
goods, etc.   And if there should hereafter be any legal
heirs of any of this, my estate, then and in that event it
is my will and testament that all such may be paid the
sum of one dollar in money to each.''

The will was executed by Mrs. Marshall, the testa-
trix, on February .1, 1908.   On September 2, 1909, she
acquired the real estate which forms the subject-matter
of the litigation, and after her death, February 1, 1913,
her brothers and sisters and the children of certain
brothers and sisters claimed the property which she had
acquired subsequent to the execution of the will as her
heirs at law.   Did the property acquired after the execu-
tion of the will pass under it?

We answer the question in the affirmative.   In the
first place, there is a presumption against partial intes-
tacy.   Of course, no controlling effect is to be given to
this presumption, but it is one which must always be
taken into account when the language employed in a will
is sufficiently ambiguous to require the application of
rules of construction in extracting its meaning.

The will devises ''all of my personal property and
real estate.''   It is apparent that the adjective ''all''
modifies both classes of property—the real estate as well
as the personal property.   The sentence immediately fol-
lowing the one which undertakes a specific description
of all the land then owned by the testatrix undertakes
a description of the personal property.   Its language is:
''Also all chattel property of any kind, including money
on hand, notes, household goods, etc.''   The phrase ''on
hand'' referred, of course, to the time of death.   Mani-
festly, there was no purpose to devise specific pieces of
money owned by the testatrix at the time of the execu-
tion of the will; nor is it to be believed that she did not
intend to collect the notes then due her but meant to keep
them for the benefit of her husband at her death.

The will, of course, was made in contemplation of
death, and the property disposed of was that ''on hand''
when that event occurred.   No other construction of the

will appears possible so far as the personal property is concerned; and we think the testatrix made no distinction between her real estate and her personal property in this respect.

We think this construction of the will is reinforced by the concluding sentence thereof. The testatrix knew that she had brothers and sisters who might survive her or be themselves survived by their own descendants. She referred to them as a class—as they will exist at the time of her death—and she designates the part they each and all of them are to have of "my estate." The phrase "my estate" as certainly comprehends real estate as it does · personal property, and the part of that estate given to each of these heirs is "the sum of one dollar in money to each."

We conclude, therefore, that it was the purpose of the testatrix to dispose of the estate which she might own at the time of her death; and when a will manifests that purpose, it includes after-acquired property of which the testator or testatrix dies seized and possessed. *Patty* v. *Goolsby,* 51 Ark. 61; *Galloway* v. *Darby,* 105 Ark. 558.

The court below so construed the will and entered judgment in accordance with that construction; and that judgment is therefore affirmed.

McCulloch, C. J. (dissenting). I think the majority is giving too much force to the presumption against partial intestacy, and in so doing have disregarded and overturned the express language of the will of the testator. We have recognized the force of that rule in many of our decisions, but have usually qualified the statement of it by saying that the presumption of partial intestacy does not arise where "such intention clearly appears from the language used in the instrument." *Galloway* v. *Darby,* 105 Ark. 558; *Webb* v. *Webb,* 111 Ark. 54.

In the present case the language of the will unmistakably showed what the intention of the testator was. He willed all the property that he owned at that time,

and it is manifest that he had no intention of willing any-
thing else. He described the particular property that
he intended to convey, and that was all he owned at that
time. He did not own the property now in controversy.

In interpreting the language of the will for the pur-
pose of ascertaining the intention of the testator we
should treat it as having spoken as of the date of the
execution of the will. *Webb* v. *Webb, supra.* At that
time the land in controversy was not owned by the testa-
tor; and, since the language used applied only to specific
property which he then owned, there is no room to apply
the doctrine of presumption against partial intestacy.
Nor should we give any additional force to the presump-
tion by reason of the fact that the heirs were cut off with
a nominal legacy. That only shows that, out of the prop-
erty sought to be conveyed under the will, his intention
was to limit the bequest to the heirs to a nominal one. It
seems to me to be that the effect of the court's decision
in this case is to make a will for the testator which he
did not see fit to make for himself—that is, to include
after-acquired property which the testator evidently
did not have in mind when he executed the will, and did
not use appropriate language to convey.