Kathleen METZGAR, *et al.* *v.* Charles RODGERS, *et al.*

CA 02–1081 128 S.W.3d 5

Court of Appeals of Arkansas
Division IV
Opinion delivered November 5, 2003

*Fogleman & Rogers*, by: *Joe M. Rogers*, for appellants.

*Rieves, Rubens & Mayton*, by: *Kent J. Rubens*, for appellant Virginia Williams.

*Stephen K. Wood*, for appellee Marty Kruchten.

OLLY NEAL, Judge. This is a will-contest case involving the disposition of the estate of Hurley Nash, who died on January 13, 2000. A holographic will that Mr. Nash wrote in 1994 was admitted to probate. This will, however, lacked a residuary clause; this lawsuit is between several of Mr. Nash's intestate heirs and some of the named beneficiaries. Appellants Kathleen Metzgar, Sue Yow, Betty Sturch, Joe Fleece, and the Estate of William D. Fleece are intestate heirs of Mr. Nash. Appellees Charles Rodgers, Marty Krutchen, Martha Williams, Roy Seaton, Nora Seaton, and Chuck Smith are beneficiaries of the will. Appellant Virginia Williams and appellee Smith are named beneficiaries of the will as well as intestate heirs of Mr. Nash. Mr. Nash's will provided as follows for distribution of the assets involved in this appeal:

<u>CD</u>

1st Nat'l BK West Mphs to Marty Kruchten — she knows how to help her get the form in

BK of West Memphis — Chas., David

UPB2 (Mphs) — 3/4 to Evely Scruggs — "some" to help with son Jimmy

1/4 to Martha Peden (nurse)

1st Tenn Bk (Mphs) → for any inheritance taxes on farms

Merrill Lynch IRA & Mutual Fund to

1/2 cousin Va Williams

1/4 to Martha Williams

1/4 Roy & Nora Seaton

Farm: 1/3 to my cousin Chuck Smith

1/3 to Marty Kruchten (cousin)

1/3 to David Rodgers with 1st option to buy if Chuck and Marty want to sell

On May 20, 2002, the trial court issued a letter opinion, stating:

> The will provides that CD, "First National Bank of West Memphis" will go to Marty Kruchten. The proof shows that at the time of making the will, in 1994, and for some ten (10) years prior thereto, there had been two CDs at that bank. The proof also shows that in October of 1995, these same CDs were converted to CDs in the Union Planters Bank, which had purchased the First National Bank of West Memphis. The proof shows that these CDs had been "rolled over" many times, but had remained in existence since they were originally opened in February of 1984. As the Court views it, the only change in these CDs from the time of the will in 1994, to the testator's death in 2000, was the result of the bank's change in ownership. This is viewed by the Court as one in form, not

substance. The fact they were "rolled over" many times is likewise viewed as form only.

The most difficult decision is whether the Court must conclude that because there were, and are two CDs, and the will only has a heading CD, this specific bequest must fail for being too indefinite. See *Cook v. Worthington*, 116 Ark. 328, 173 S.W. 395 (1915). After all, the court may not speculate as to what the testator meant, or to re-write the will. *Cook*, supra. Moreover, where the will speaks in the singular, the beneficiary is not entitled to all accounts at the named institution. *Basinger v. Bridges*, 292 Ark. 396, 730 S.W.2d 486 (1987). (The Court holding there "this account" was "unambiguously singular").

But in construing this will, it seems to the Court that the CD used in the will was a heading, not an indication of the singular. (See *Black's Law Dictionary*: Singular: In grammar, the singular is used to express only one. In law, the singular frequently include the plural.) The testator was obviously cryptic and truncated in his writings and habits. He did not say "a CD", or "the CD".Yet, he obviously was aware he had more than one CD at the time he was writing the will. And while the Court may not speculate as to the testator's intent, the Court may consider what the testator must have known. *In re Ritter's Estate*, 239 Iowa 788, 32 W.W.2d [sic] 666, 2 A.L.R. 2d 1301 ( ). It seems likely the testator used CD to distinguish it from other accounts. As the *Cook v. Worthington*, supra, Court points out, in quoting with approval from *Jarman on Wills*, a wide latitude must be given to testators, in dealing with the intent:

> "The most unbounded indulgence has been shown to the ignorance, unskillfulness, and negligence of testators."

The Court concludes, and holds, that the two CD's at Union Planters Bank, numbered 16450 and 16451 were specifically bequeathed to Marty Krutchen.

The court also found that the three First Tennessee Bank CDs were part of the intestate estate because there was no evidence to indicate whether they were in existence at the time the will was executed. It explained:

CD-First Tennessee Bank

The will provides "First Tennessee Bank (Memphis)—for any inheritance taxes on farms." The proof shows that tracing back to the time of making the will in April of 1994 is not possible, due to the bank having no records, and the only record of the estate is a sheet that, for convenience, has been marked 2-5. But really, the Court has no firm knowledge of what the deceased owned at time of making the will, as to what CD, or CDs, the deceased had at First Tennessee Bank. Page 2-5 is undated, and may be totally unrelated to the April 1994 will, terms of date. It may be much sooner or later, so far as the Court can determine. Although the will speaks at time of death, in the effort to determine intent, the Court will look to the date of execution of the will. *Webb v. Webb*, 111 Ark. 54, 163 S.W. 1167 (1914):

> "... the judges submit to be bound by precedents and authorities in point, and endeavor, as we have seen, to collect the intention upon grounds of judicial nature, as distinguished from arbitrary occasional conjecture."

The deceased may have had one or more CDs with this institution at the time of the will, and the amount of them may have been small or large. It really does not seem likely that the testator intended to include after acquired property in his bequest. As noted, he updated and changed his will many times over the years, and it is unlikely, he would have included after acquired assets under the heading "CD". The Court is aware of the holding in *Brock v. Turner*, 147 Ark. 421, 2276 S.W.597 (1921), that after acquired property does pass under a will, where the intent so indicates. The dispositive words there were "all my personal property and real estate, ..." No such language is used in the will here.

The court made the following findings regarding the Merrill Lynch IRA and the Nuveen fund:

Merrill Lynch IRA and Mutual Fund

The will provides—"Merrill Lynch IRA and Mutual Fund to cousin Virginia Williams (1/2), (1/4) to Martha Williams, 1/4 Roy and Nora Seaton." The proof shows that deceased purchased the Nuveen Municipal Advantage on January 18, 1990, and that this is a

> Mutual Fund. The proof also shows that the Merrill Lynch IRA was cashed in by the deceased on October 29, 1999.
>
> It seems to the Court that the Nuveen Municipal Advantage Fund has been shown to be the mutual fund set out in the will, having been acquired in 1990. The Merrill Lynch IRA was cashed out by the deceased in 1999, and thus was adeemed by the deceased. SU2
>
> The Court holds that the Nuveen Fund will be taken 1/2 by Ms. Virginia Williams, 1/4 by Ms. Martha Williams, and 1/4 by Roy and Nora Seaton.

An order incorporating these findings was entered on June 19, 2002.

On July 19, 2002, appellants Metzgar, Yow, Sturch, Fleece, and Estate of Fleece filed a notice of appeal from the June 19, 2002, decision. Their points on appeal attacked the disposition of the two CDs at Union Planters Bank that were bequeathed to appellee Krutchen and the disposition of the Nuveen fund awarded to appellant Virginia Williams, appellee Martha Williams, appellee Roy Seaton, and appellee Nora Seaton. Appellants Metzgar, Yow, Sturch, Fleece, and Estate of Fleece filed the record with the supreme court clerk on October 10, 2002. Their first brief was filed with this court on December 23, 2002.

On June 28, 2002, appellee Smith moved for reconsideration of the court's June 19, 2002, order on the ground of newly discovered evidence. In his motion, he stated that his attorneys had been advised in April 2002 by Jeanne Griffis, the manager of legal records for First Tennessee Bank, that she had conducted a diligent search for the CDs that were in existence in 1994, that all records prior to 1996 had been disposed of, and that First Tennessee Bank would be unable to authenticate any records prior to 1996. However, Smith stated, after the court's June 19, 2002, order was entered, he was able to persuade another officer for First Tennessee Bank, Paul Fehrman, to conduct another search of the bank's records during which he was able to find copies of the CDs that Mr. Nash owned in April 1994.

Appellee Smith filed an affidavit by Mr. Fehrman, who stated:

1. I am a branch manager for First Tennessee Bank, Memphis, Tennessee. I have been employed by First Tennessee Bank for eight years.

2. As an officer of First Tennessee Bank, I am familiar with the Bank's records and I do certify that the Exhibits attached to this Affidavit are part of First Tennessee Bank's business records which are kept in the ordinary course of the Bank's business. I further certify that the Exhibits attached hereto are true and accurate copies of the originals of these documents attached.

3. Attached hereto as Exhibit "1" is a copy of a Certificate of deposit receipt number 460146, that was issued by First Tennessee Bank to C. Hurley Nash, Jr. on 01-10-92, in the amount of 50,000.00, bearing interest at the rate of 6% per annum. Said certificate of Deposit was issued for a term of sixty months, with a maturity date of 01-10-97. At maturity, the proceeds from the above numbered Certificate of Deposit were used by Mr. C. Hurley Nash, Jr., to purchase Certificate of Deposit number 833290 in the amount of $50,000.00, dated January 10, 1997.

4. Attached hereto as Exhibit "2" is a copy of a Certificate of Deposit receipt number 460123, that was issued by First Tennessee Bank to C. Hurley Nash, Jr., on 12-21-91, in the amount of $50,000.00, bearing interest rate of 6.4% per annum. Said Certificate of Deposit was issued for a term of sixty months, with a maturity date of 12-21-96. At maturity, the proceeds from the above numbered Certificate of Deposit were used by Mr. C. Hurley Nash, Jr., to purchase Certificate of Deposit number 12794438 in the amount of $50,000.00, dated December 21, 1996.

5. Attached hereto as Exhibit "3" is a copy of a Certificate of Deposit receipt number 497891, that was issued by First Tennessee Bank to C. Hurley Nash, Jr., on 12-30-91, in the amount of $10,000.00, bearing interest at the rate of 6% per annum. Said Certificate of Deposit was issued for a term of sixty months, with a maturity date of 12-30-96. At maturity, the proceeds from the above numbered Certificate of Deposit were used by Mr. C. Hurley Nash, Jr., to purchase Certificate of Deposit number 833277 in the amount of $10,000.00, dated December 30, 1996.

6. Attached hereto as Exhibit "4" is a copy of the form 1099-NT, Federal Tax reporting document on interest earned by C. Hurley

Nash, Jr., for the tax year 1994, which shows that the full face amounts of interest were paid on the three above described Certificates of Deposit for the entire tax year of 1994.

The court granted this motion and took additional evidence. Paul Fehrman's deposition was taken on August 30, 2002. In its letter opinion dated October 23, 2002, the court explained its decision:

The issue presented is whether three certificates of deposit owned by deceased, at the First Tennessee Bank, should pass under the will, or as intestate property. The question turns on whether the funds were there when the will was prepared, and continued to time of death.

The proof offered is the testimony of the financial center manager of the bank issuing the certificates, and seven exhibits sponsored by this witness. The exhibits offered invoke A.R.E. 803(6) and 901.

In arriving at the decision, the Court consulted the authorities cited, as well as other research. Probably the outer limit of business records admissibility is the case of *Wildwood Contractors v. Thompson-Halloway Real Estate*, 17 Ark. App. 169, 705 S.W.2d 897 (1986). There, the Court upholds records prepared by another party (the insurance company), sponsored by an agency of the company (the appellee/plaintiff), concerning an audit prepared by someone at the insurance company, the audit being based upon information obtained from someone employed by another party (the appellant/defendant). As the Court there noted, there were "several close questions." But the audit was admitted, and the trial court was affirmed.

But surely a close second for outer limit of admissibility, is *Beard v. Ford Motor Credit*, 41 Ark. App. 174, 850 S.W.2d 23 (1993). There, a statement from a third party as to its business was admitted, despite the only sponsor being an employee of the appellee, who testified "he is not familiar with this particular auction company." Yet the statement from that third party company was admitted, and it was upheld on appeal.

*Cates v. State*, 267 Ark. 726, 589 S.W.2d 598 (1979), shows that the sponsor does not have to be an employee of the business, to

testify both as to the contents of the records, and how those records applied to a particular person. *Wilburn v. State*, 317 Ark. 73, 876 S.W.2d 555 (1994) teaches that the phrase "other qualified witness" is to be given a broad interpretation. *Mitchell v. State*, 309 Ark. 151, 828 S.W.2d 351 (1992) seems to say even an employee unfamiliar with the particular entries, can still be a sponsor of the records, if shown he is familiar with the business and its record keeping practices.

*Columbia Mutual Insurance Co. v. Patterson*, 320 Ark. 584, 899 S.W.2d 61 (1995), shows that in addition to the requirement of proving admissibility under A.R.E. 803(6), you must also establish authenticity under A.R.E. 901. There, the Court ruled that a form type policy must be shown to be, by the sponsoring witness, the exact insurance policy issued to an insured, and the trial court was affirmed in denying its admission, even though the reason given was a lack of knowledge by the sponsor, which was an erroneous reason. The lesson here is that even though a record is admissible under 803(6), it still must pass muster under 901. To the Court, there does not seem to be an authenticity problem here, as was present in *Patterson*. There, the witness could not definitely state the proffered form policy contained the exact language as the insured's policy. Here, it seems obvious to the Court that the original certificates purchased by the deceased prior to his writing of the will, continued until death, although they were renewed at maturity, by purchase of renewal certificates.

The crux of the inquiry is whether the records are "worthy of belief"— *Wilburn*, supra—or, put another way, are they trustworthy? Here, it seems to the Court the documents are shown to be trustworthy. The sponsor is a manager at the bank, having been employed there since 1994. The records show they were prepared in conformity with the requisite of 803(6), and authentic within the meaning of 901. The seven prong test set out in several of the cases, appear to the Court to be satisfied.

It seems the witness was familiar with the workings of the bank, and how the records were kept, and how they were generated. The proof shows all three certificates were initially taken out prior to the will, existed at the time of execution, and at the time of death.

The Court holds the certificates pass under the will.

On November 19, 2002, the court entered an order disposing of the property as expressed in its letter opinion. On November 20, 2002, appellants Williams, Metzgar, Yow, Sturch, Fleece, and Estate of Fleece moved to amend the November 19, 2002, decision on the ground that Mr. Fehrman lacked personal knowledge of the matter, and that the exhibits were inadmissible for lack of authentication and for failure to meet the requirements for an exception to the hearsay rule.

On December 18, 2002, the trial court entered an order finding:

> [T]he testimony of Paul Fehrman together with the exhibits offered by this witness reveal that the three First Tennessee certificates of deposit that existed in the name of Hurley Nash prior to the execution of his will in 1994 were used to acquire the three First Tennessee certificates of deposit that were in existence at the time of his death.

> That the Court's letter opinion dated October 23, 2002, is hereby amended to include this specific finding but otherwise the Joint Motion of Virginia Williams, Kathleen Metzgar, Sue Yow, Betty Sturch, Joe Fleece, and the Estate of William Fleece to alter or amend order entered herein on November 19, 2002, is denied.

On December 31, 2002, appellant Williams filed a notice of appeal from the court's November 19 and December 18, 2002, orders. On January 3, 2003, appellants Metzgar, *et al.*, filed another notice of appeal to include the November 19 and the December 18, 2002, orders.

In addition to a procedural issue (whether the court erred in granting the motion to reconsider), the rights to three specific legacies are at issue in this appeal: (1) two $100,000 CDs at Union Planters Bank (formerly First National Bank of West Memphis); (2) three CDs from First Tennessee Bank in the sums of $10,000, $50,000, and $50,000; (3) 1,400 shares of Nuveen Municipal Advantage Fund. All of the appellants dispute the disposition of the First Tennessee Bank CDs. Only appellants Metzgar, Yow, Sturch, Fleece, and Estate of Fleece dispute the disposition of the Union Planters Bank CDs and the Nuveen fund.

Probate cases are reviewed *de novo* on appeal, and we will not reverse unless the findings of the probate court are clearly erroneous. *Wells v. Estate of Wells*, 325 Ark. 16, 922 S.W.2d 715 (1996).

*Union Planters Bank CDs*

At the time of his death, Mr. Nash owned two $100,000 CDs with Union Planters Bank. Appellants Metzgar, *et al.*, argue that the trial court erred in finding that two $100,000 CDs, numbers 16450 and 16451, at Union Planters Bank, were specifically bequeathed to appellee Krutchen in the April 1994 will. Both certificates were dated October 27, 1995, and were originally issued by First National Bank of West Memphis, Arkansas, which was subsequently acquired by Union Planters Bank. Certificate of Deposit No. 16450 originated from First National Bank CD No. 1051 dated February 1, 1984, in the sum of $98,391.75. Certificate of Deposit No. 16451 originated from First National Bank CD No. 1052 dated February 1, 1984, in the sum of $89,040.62.

Appellants point out that the evidence reveals that there were two First National CDs in existence in April 1994 in the amounts of $98,391 and $89,040.62. They argue that there is no evidence of the source of the additional funds in the amounts of $1,609 and $10,959.38, respectively, that were obviously added to the original certificates to equal the $100,000 amounts in the CDs that Mr. Nash owned at his death. According to appellants, these two CDs cannot be traced to the CDs identified in the will.

██ The trial court's finding of fact on this issue is not clearly erroneous. In fact, the evidence clearly demonstrates that the original CDs' interest was reinvested or rolled over through the years. Martha Hunt, an assistant vice president of financial services at Union Planters Bank, who has been affiliated with the bank for about twenty-five years, testified that Union Planters Bank acquired First National Bank of West Memphis in 1995 or 1996. She testified that she had researched the CDs that Mr. Nash had at the bank and stated that the two $100,000 CDs that were in existence at the time of his death originated at First National Bank of West Memphis in 1984 and remained there until they were rolled over in October 1995 when First National Bank was acquired by Union Planters Bank. She testified that First National Bank CD No. 1051 became CD No. 16450 and that CD No. 1052 became CD No. 16451.

Appellants also argue that the will did not designate which CD Mr. Nash intended for Ms. Krutchen to have. They argue that, because the will only designates "CD" in the singular sense, it was improper for the trial court to speculate on Mr. Nash's intent or to

rewrite his will to achieve what it believed he may have intended. Appellants contend that, because there were two CDs of different denominations in existence at the time of the execution of the April 1994 will and the will did not state which CD the beneficiary was to receive, the bequest must fail.

In the interpretation of wills, the paramount principle is that the intent of the testator governs. *In re Estate of Harp*, 316 Ark. 761, 875 S.W.2d 490 (1994); *Carpenter v. Miller*, 71 Ark. App. 5, 26 S.W.3d 135 (2000). The testator's intent is to be gathered from the four corners of the instrument itself. *Id*. However, extrinsic evidence may be received on the issue of the testator's intent if the terms of the will are ambiguous. *Id*. An ambiguity has been defined as an indistinctness or uncertainty of meaning of an expression in a written instrument. *Id*. Although the use of extrinsic evidence is appropriate when the will expresses an intent, it is inappropriate when the instrument expresses no intent. *David Terrell Faith Prophet Ministries v. Estate of Varnum*, 284 Ark. 108, 681 S.W.2d 310 (1984). Inquiry may be made into all relevant circumstances where the existence of testamentary intent is in doubt. *Id*.

The apparent meaning of particular words, phrases or provisions in a will should be harmonized, if possible, to such scheme, plan, or dominant purpose that appears to have been the intention of the testator. *Bradshaw v. Pennington*, 225 Ark. 410, 283 S.W.2d 351 (1955). When the words of one part of a will are capable of a two-fold construction, the construction that is most consistent with the intention of the testator, as ascertained from other portions of the will, should be adopted. *Cross v. Manning*, 211 Ark. 803, 202 S.W.2d 584 (1947).

There is also a strong presumption against partial intestacy, and a will is to be interpreted so as to avoid it unless the language of the will compels a different result. *Rufty v. Brantly*, 204 Ark. 32, 161 S.W.2d 11 (1942). The presumption against partial intestacy, though not controlling, must always be taken into account when the language employed in a will is so ambiguous as to require construction. *Brock v. Turner*, 147 Ark. 421, 227 S.W. 597 (1921). However, the rule against partial intestacy is not used unless there is some ambiguity. *Chlanda v. Estate of Fuller*, 326 Ark. 551, 932 S.W.2d 760 (1996).

In *Basinger v. Bridges*, 292 Ark. 396, 730 S.W.2d 486 (1987), the will in question provided in part: "I give, devise and bequeath to my niece, Mary Katherine Basinger of Route 1 Box 185, Huntington, Arkansas, my savings at First Federal Savings and Loan Association in Van Buren, Arkansas. Her name has been placed on this account." The decedent, however, died possessed of three savings accounts at that institution, and only one of them listed the appellant as a payable-on-death beneficiary. The trial court granted the beneficiary's claim to the account that listed her name but denied her claim to the other accounts. The supreme court agreed, stating that the use of the term "this account" in the will was "unambiguously singular." *Id.* at 396-97, 730 S.W.2d at 487. The court concluded by noting that, when the language of the testatrix is unambiguous and leaves no doubt as to her intent, it would not look beyond that language in construing the will.

█ We hold that the trial court's construction of the will is reasonable. In this case, we are presented with a situation that is distinguishable from the facts in *Baysinger v. Bridges, supra.* In his will, Mr. Nash did not limit his bequest to a single account. The term "CD" is obviously a heading under which Mr. Nash listed the banks at which he had CDs and the people he wanted to receive them. He obviously knew that he had more than one CD. Accordingly, we hold that the trial court's findings regarding the Union Planters Bank CDs are not clearly erroneous.

### The Nuveen Fund

██ Appellants Metzgar, *et al.*, also contend that the trial court erred in finding that the Nuveen fund should be divided among appellant Virginia Williams, appellee Martha Williams, appellee Roy Seaton, and appellee Nora Seaton, as provided in the will. They point out that there was testimony that the Merrill Lynch IRA fund was closed in October 1999 and argue that an ademption occurred at that time. Appellants also argue that the court's finding that the Nuveen fund is a mutual fund is clearly erroneous and assert that it is a stock fund. Further, they argue that, even if the trial court properly found that the Nuveen fund was a mutual fund, there was no evidence to suggest that it was the mutual fund that the decedent bequeathed in his April 1994 will. They argue that, although the Nuveen fund was acquired by Mr. Nash in 1990, a municipal trust fund, which he acquired in 1983, was also in existence at the time of the drafting of the 1994 will and

at the time of Mr. Nash's death. A specific legacy is the bequest of a particular thing, as distinguished from all others of the same or similar kind, and must be satisfied only by the delivery of the particular thing. *Kidd v. Sparks*, 276 Ark. 85, 633 S.W.2d 13 (1982). The rule is universal that, in order to make a specific legacy effective, the property bequeathed must be in existence and owned by the testator at the time of his death, and the nonexistence of property at the time of the death of a testator that has been specifically bequeathed by will is the familiar and almost typical form of ademption. *Id.*

The trial court's finding of fact that the Nuveen fund was the mutual fund mentioned in the will is not clearly erroneous. Metzgar Exhibit 9, a copy of a certificate for 1,400 shares of the Nuveen fund, was dated January 18, 1990. William Ayers, the administrator, testified that that certificate was in effect at the time of Mr. Nash's death. In his view, the Nuveen fund appeared to be akin to a mutual fund because Mr. Nash received a monthly check that had shares that were valued each month on the check stub in different amounts. Mr. Ayers testified that he found evidence demonstrating that Mr. Nash had closed his Merrill Lynch IRA account in October 1999. However, he possessed the original of a letter to Mr. Nash from Merrill Lynch Investment Company dated July 20, 1998, that he found among Mr. Nash's papers. This letter provided in part: "Nuveen Municipal Advantage Fund is a closed end mutual fund that is traded on the exchange. The ticker symbol is NMA and the current price as of today's date is $16.1875. The next dividend payment is 8-3-98. This also pays a monthly dividend."

In our view, this letter supports the trial court's finding that the Nuveen fund was the Merrill Lynch mutual fund bequeathed by the will. We also affirm on this issue.

*Newly Discovered Evidence and Its Admissibility*

Appellants Metzgar, *et al.*, further argue that the trial court abused its discretion in granting a new trial to appellee Smith on the distribution of the First Tennessee Bank CDs on the basis of newly discovered evidence. Noting that the decedent died on January 13, 2000, and that the first order addressing the CDs' ownership was entered on June 19, 2002, they argue that appellee

Smith could have discovered these documents with reasonable diligence. Appellant Williams makes a similar argument.[1]

 A new trial may be sought on the basis of newly discovered evidence material for the party applying, which he could not, with reasonable diligence, have discovered and produced at trial. Ark. R. Civ. P. 59(a)(7). A new trial based on newly discovered evidence is not a favored remedy, and whether to grant a new-trial motion on such a ground is within the sound discretion of the trial court. *Virginia Ins. Reciprocal v. Vogel*, 73 Ark. App. 292, 43 S.W.3d 181 (2001). On appeal from the grant of a new trial, the appellate court will affirm unless there has been a manifest abuse of discretion. *Id.* A manifest abuse of discretion in granting a new trial means discretion improvidently exercised, *i.e.*, exercised thoughtlessly and without due consideration. *Id.* Further, the burden is on the movant to show that he could not with reasonable diligence have discovered and produced the evidence at the time of the trial, that the evidence is not merely impeaching or cumulative, and that the testimony would have changed the result of the trial. *Id.* A stronger showing of abuse of discretion is necessary when a new trial has been granted, on the theory that the beneficiary of the verdict that was set aside will have another opportunity to prevail and has less basis for a claim of prejudice than does one who has unsuccessfully moved for a new trial. *Id.*; David Newbern and John Watkins, *Arkansas Civil Practice & Procedure* § 27-1 (3d ed. 2002).

 We cannot say that the trial court manifestly abused its discretion in granting the motion for reconsideration or that appellee Smith was not reasonably diligent in relying upon the

---

[1] Appellees Rodgers and Smith argue that they were reasonably diligent in relying on Ms. Griffis's affidavit because she was subpoenaed to produce all documents pertaining to Mr. Nash's CDs from 1993 through the present. As a supplemental addendum to his brief, appellee Rodgers attached a copy of this subpoena. In their reply brief, appellants Metzgar, *et al.*, point out that this subpoena is not a part of the record on appeal and that it was issued only by appellant Rodgers, who did not move for reconsideration. In their reply brief, they argue that appellee Smith cannot rely on the issuance of the subpoena by appellee Rodgers to support his assertion of reasonable diligence. Because this argument was first raised in a reply brief, we need not consider it. *Helena/W. Helena Schs. v. Hislip*, 78 Ark. App. 109, 79 S.W.3d 404 (2002). In any event, the trial court stated, in the order granting the motion for reconsideration, that it did not consider "any argument, pleadings or other matters presented by" appellee Rodgers, nor need we do so.

statements of Jeanne Griffis regarding the unavailability of the records at First Tennessee Bank. In her affidavit, Ms. Griffis stated that she was the custodian of records for First Tennessee Bank, that all records prior to 1996 had been disposed of, and that she could not authenticate any records prior to that time. Given Ms. Griffis's position at the bank, appellee Smith's reliance upon her statements was justifiable. However, his contact with Paul Fehrman, of First Tennessee Bank, after the June 19, 2002, order was entered proved that Ms. Griffis had been mistaken. We cannot say that the trial court acted thoughtlessly and without consideration in granting this motion after it had reviewed the affidavits of Ms. Griffis and Mr. Fehrman and heard the arguments of counsel, and we affirm the trial court's decision on this issue.

▇▇▇ Appellants also contend that the court erred in admitting the First Tennessee Bank documents into evidence. They assert that appellees failed to establish their admissibility as exceptions to the hearsay rule as business records under Ark. R. Evid. 803(6). The admission of evidence is left to the sound discretion of the trial court. *Aka v. Jefferson Hosp. Ass'n, Inc.*, 344 Ark. 627, 42 S.W.3d 508 (2001). On appeal, the trial court's ruling will not be reversed absent a manifest abuse of discretion. *Id.*

▇▇▇ Rule 803 of the Arkansas Rules of Evidence provides that certain statements are not excluded by the hearsay rule, even though the declarant is available as a witness. Subsection (6) provides that the following is not excluded from evidence:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

"This exception to the hearsay rule is broadly worded to liberalize old rules and permit the records of most business activity to be admissible

into evidence provided certain specified conditions are met." Wilson Howe, *Arkansas Rules of Evidence* 229 (2d ed. 1995 and Supp. 1997). However, the rule does not require that the records be authenticated by the record custodian; provided he has sufficient familiarity with the records, another qualified witness will do. *Id.* The 1997 supplement to this treatise notes at page thirty that the rule has been further liberalized in recent years: "Actual testimony of the custodian of the records is no longer required; the proper foundation for admission of such records may now be laid by introduction of an affidavit of such person stating the necessary foundational items." *See* Ark. Code Ann. § 16-46-108 (Repl. 1999).

A trial court has wide discretion to determine whether a business record lacks trustworthiness, and we will not reverse absent an abuse of that discretion. *Wildwood Contractors v. Thompson-Holloway Real Estate Agency*, 17 Ark. App. 169, 705 S.W.2d 897 (1986). It is the fact that regularly kept business records are relied upon for business decisions that makes them trustworthy enough to be admissible as an exception to the hearsay rule. *Id.* The sponsor witness need not have actual knowledge of the actual creation of the document itself; such personal knowledge of its creation goes to the weight rather than the admissibility of the evidence. *Id.* The length of time that a witness has been employed by a business and his knowledge of how the business records are maintained are relevant to a witness's qualification under Rule 803(6). *Mitchael v. State*, 309 Ark. 151, 828 S.W.2d 351 (1992).

Appellees easily satisfied the requirements of Rule 803(6) and proved that the First Tennessee Bank's records were admissible as an exception to the hearsay rule. Through Mr. Fehrman's testimony in his deposition, copies of the three CDs owned by Mr. Nash in April 1994 were introduced, as were copies of the three CDs Mr. Nash owned at the time of his death. These records show the date each certificate was issued, the amount, and the maturity date. When the documents are compared, it is apparent that the CDs that Mr. Nash owned in 1994 were rolled over into the three CDs that he owned at his death. The maturity dates on the earlier certificates coincide with the issue dates of the later certificates. The fact that the cashing-in dates of the earlier certificates and the issuing dates of the later ones vary by a few days was explained by Mr. Fehrman, who testified that the bank's

policy is to give CD customers seven days after the maturity date to come into the bank and purchase a new CD, in which case the CD would be back-dated to the maturity date of the earlier certificate so that the customer would not lose any interest.

The facts that Mr. Fehrman is not the custodian of the records, had no personal knowledge of their preparation, and was not employed at the bank when these documents were prepared do not prevent the admission of these records into evidence. The rule does not require that the sponsoring witness have knowledge of the creation of the document; his personal knowledge regarding the preparation of the business record goes to the weight, rather than the admissibility, of the evidence. Mr. Fehrman testified that he has been employed by the bank since October 1994 and is familiar with the bank's normal business operations and its record-keeping procedures. Mr. Fehrman was an "other qualified witness" within the meaning of Rule 803(6).

Additionally, appellants argue that appellees failed to authenticate these documents as required by Ark. R. Evid. 901, which requires a party offering evidence to establish by a competent witness that their content is worthy of belief—that they are what they are claimed to be. The requirement of authenticity is separate from the requirement that a hearsay document must satisfy an applicable hearsay exception for admissibility. *Columbia Mut. Ins. Co. v. Patterson*, 320 Ark. 584, 899 S.W.2d 61 (1995).

We also believe that Mr. Fehrman adequately authenticated the records under Rule 901. He repeatedly testified that the copies to be introduced were true and accurate copies of the records that they depicted. Accordingly, we hold that the trial court did not abuse its discretion in admitting these documents into evidence.

Appellants also argue that the trial court erred in concluding that the First Tennessee Bank CDs passed under the 1994 holographic will. They contend that it was improper for the trial court to construe the will as providing for three CDs because it designates "CD" in the singular rather than in the plural. We disagree and hold that the trial court properly construed the will as providing for more than one CD at First Tennessee Bank. The trial court believed that the singular term "CD" was simply a heading used by Mr. Nash in his will. As with the CDs discussed above, the

trial court's construction of this part of the will is reasonable. Mr. Nash, in listing property at four banks under a heading of "CD," obviously knew that he owned more than one CD. He apparently used the term "CD" as a heading to refer to his certificates of deposit and to distinguish them from his other types of assets, such as "farm" and "Merrill Lynch IRA & Mutual Fund." None of the bequests under the heading "CD" referred to the actual number of CDs or their denominations held at those banks; they were simply identified by the bank issuing them. We affirm the trial court's decision on this issue.

Appellants further argue that the three First Tennessee Bank CDs that Mr. Nash owned at the time of his death were not proven to be the same CDs that were mentioned in his will. We disagree. Mr. Fehrman's testimony clearly demonstrated that they were the same. As with the other tracing issues, this is a finding of fact that is not clearly erroneous.

Therefore, we affirm the trial court's decision regarding the disposition of the First Tennessee Bank CDs.

Affirmed.

STROUD, C.J., agrees.

ROAF, J., concurs.