
# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-14-75

HERBERT C. SOUTHERN
APPELLANT

V.

HIGHLINE TECHNICAL
INNOVATIONS, INC., AND
ALTERNATIVE HYDROGEN
SOLUTIONS, LLC
APPELLEES

Opinion Delivered November 5, 2014

APPEAL FROM THE WASHINGTON
COUNTY CIRCUIT COURT
[NO. CV-2013-467-7]

HONORABLE JOANNA TAYLOR,
JUDGE

AFFIRMED

## RITA W. GRUBER, Judge

On February 25, 2013, Herbert C. Southern filed a complaint in the Circuit Court of Washington County to collect moneys owed him by two start-up companies: Highline Technical Innovations, Inc. (HTI), and Alternative Hydrogen Solutions, LLC (AHS). He prayed for judgment of $102,270 against AHS as the balance due for his services as its attorney from May 15, 2012, to January 12, 2013; judgment of $195,883.70 against HTI as the balance for his services as its attorney from October 28, 2010, to January 31, 2013, and for $347.28 in fees and costs; and prejudgment and postjudgment interest against each company. The separate defendants HTI and AHS, now appellees, filed a common answer to the complaint on March 28, 2013.[1] On April 2, 2013, Mr. Southern filed a motion to strike the answer and

---

[1]Appellees filed a notice of cross-appeal in the case now before us. They identify themselves in their brief to this court as both appellees and cross-appellants, but the brief presents only their position as appellees and presents no points or arguments as cross-appellants. We therefore have nothing to address as a cross-appeal.

a motion for default judgment, asserting that the answer was a nullity because it was filed by appellees' corporate CEO rather than by an attorney licensed to practice law in Arkansas, and that he was entitled to a default judgment in accord with the relief prayed for in his complaint.

At the hearing on his motion to strike and motion for default, Mr. Southern testified about his work for the companies, how he was paid, and what he was owed.[2] The circuit court announced its ruling from the bench, striking the March 28, 2013 answer as a nullity because it was not filed by a licensed attorney and finding that a second answer, which an attorney had filed on April 11, 2013, would have been proper but was untimely. At a damages hearing that immediately followed, testimony was given by Chad Coats, the CEO of HTI and AHS; Mr. Southern; and Harold Zeller, CFO of HTI. At the conclusion of the damages hearing, the court noted "conflicting testimony on a number of points" and announced extensive oral findings.

In the resultant written order and amended order, the circuit court granted Mr. Southern's motion to strike appellees' answer and his motion for default judgment, and entered judgment of $8,670.15 against HTI and $24,967.74 against AHS, plus pre- and post-judgment interest. Mr. Southern now appeals from these orders and his posttrial motions for clarification, reconsideration, and new trial, on which the circuit court took no action and were therefore deemed denied. He contends that the circuit court (1) improperly granted

---

[2]Mr. Southern testified that in a previous joint venture, a company called HSG [Hydrogen Systems Group] was to sell a product manufactured by HTI. He testified that he was working for HTI when negotiations were completed for the joint venture and AHS was created, at which time he became chief legal officer for AHS, a pass-through company he described as "the glue that sealed the whole thing together."

appellees the benefit of an affirmative defense that they had not pleaded, (2) erred by ruling that a spreadsheet he proffered as AHS's budget projection was hearsay, and (3) should have granted his motion for new trial under Ark. R. Civ. P. 59(a). We affirm.

## I. *Affirmative Defense*

Mr. Southern contends that the circuit court, acting sua sponte, improperly inferred an affirmative defense of waiver and granted relief that appellees had not pleaded. He argues that HTI should be held to an alleged "letter agreement" of how he would be paid and that "the court erred when it found that the letter was superseded by an agreement of $5,000 per month." Appellees, agreeing that they did not plead waiver, respond that the circuit court made no ruling granting such an affirmative defense and made no finding that Mr. Southern waived any right to seek recovery in amounts exceeding "a monthly salary."

The circuit court stated in its oral findings that, based on the testimony of Mr. Southern and Chad Coats, Mr. Southern was to have been paid $5,000 a month for his services as chief legal officer (CLO) to HTI. The court divided the payments into two time periods: November 4, 2010, when he began working for HTI, until December 1, 2011; and December 1, 2011, through February 2013.

Regarding the first time period, the circuit court found that

the 20 million shares of stock . . . were issued on November 15, 2011, so I want to get through the month of November of 2011 in coming to some conclusions about payment. That is 13 months at $5,000, which would be $65,000 due and owing from HTI to Mr. Southern for his services. Mr. Southern was paid money in the sum of $18,272.30 during that time. And he was also issued 20 million shares of stock, the value of which is unknown. The testimony was that [it] was valued at $57,000 the day it was issued; however, it was restricted stock so it couldn't be sold until a year later. No one offered any testimony as to what the stock would be worth a year later. It was

purely speculative... .

The court concluded that Mr. Southern had been paid in full for services rendered through the date the stock was issued. For the subsequent period of employment, the fifteen months from December 1, 2011, through February 2013, the court again calculated the amount due from HTI at $5,000 a month, which resulted in $75,000 due; subtracting $66,329.85 that HTI had paid in the period, the court found that HTI owed Mr. Southern $8,670.15.

Mr. Southern essentially argues that because appellees did not properly or timely answer his complaint for damages, thus placing them in default, he is entitled to recover all damages he requested. It is well settled, however, that a default judgment establishes only liability and not the extent of damages. *Tharp v. Smith*, 326 Ark. 260, 930 S.W.2d 350 (1996). Even when a default judgment is granted on the issue of liability, the amount of judgment must be established and the defaulting defendant has the right to cross-examine witnesses and introduce evidence in mitigation of damages. *Hensley v. Brown*, 2 Ark. App. 175, 617 S.W.2d 867 (1981). Furthermore, averments in a pleading as to the amount of damages are not admitted by the party against whom they are made simply because the party does not expressly deny them. *See Jean-Pierre v. Plantation Homes of Crittenden Cnty., Inc.*, 350 Ark. 569, 89 S.W.3d 337 (2002).

There was conflicting evidence regarding how Mr. Southern was to be paid for his services. After evaluating testimony by Mr. Southern and Mr. Coats, the circuit court found that compensation was to have been $5,000 a month. Neither the court's findings nor its order indicate that the court granted appellees the affirmative defense of waiver; there is no

 

merit to Mr. Southern's contention that the circuit court improperly granted relief not asked for in the pleadings.

## II. *Hearsay Ruling*

Mr. Southern contends that the circuit court erred by ruling that Exhibit No. 6, a spreadsheet that he proffered as AHS's budget projection, was hearsay. He relies on his own testimony that the document came into his possession from the email of Bill Cunetta, AHI's COO, who made the billing arrangement with him.

The admission of evidence is left to the sound discretion of the trial court, whose ruling will not be reversed on appeal absent a manifest abuse of discretion. *Metzgar v. Rodgers*, 83 Ark. App. 354, 128 S.W.3d 5 (2003). To have abused its discretion, the circuit court not only must have made an error in its decision, but also must have acted "improvidently, thoughtlessly, or without due consideration." *Poole v. Poole*, 2009 Ark. App. 860, at 12, 372 S.W.3d 420, 428. Even if the trial court erred in making an evidentiary ruling, we would affirm absent a showing of prejudice. *Id.* The requirement of authenticity is separate from the requirement that a hearsay document must satisfy an applicable hearsay exception for admissibility. *Metzgar, supra.* Moreover, we will affirm a trial court when it has reached the right result although it announces the wrong reason. *Meins v. Meins*, 93 Ark. App. 292, 218 S.W.3d 366 (2005).

Mr. Southern argues that a statement such as Exhibit No. 6 "is admissible even if the declarant is available, because an admission by a party-opponent is non-hearsay and, thus, does not require unavailability. ARE 803." Even if the circuit court erred in ruling that the

spreadsheet was hearsay, reversal is not required on this point.

Appellees, repeating the arguments they made at trial, correctly point out that the spreadsheet clearly lacked proper authentication. There was no proffer of the purported email itself, and no foundation was laid regarding who prepared the document or establishing it as a statement attributable to either appellee. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." Ark. R. Evid. 901(a) (2014). The requirement can be satisfied, for instance, through "testimony of a witness with knowledge that a matter is what it is claimed to be." *See* Ark. R. Evid. 901(b)(1) (2014). Mr. Southern testified that he was not an intended recipient of the purported email to which the document was attached and that he received the email only because it was re-routed to the company's "catchall" inbox, oops@hyimpact.com, to which he had access. There was no evidence that the spreadsheet was genuine and had not been tampered with, as is required for authentication. *See Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002). We hold that the court did not abuse its discretion in denying admission of the document into evidence.

### 3. *Motion for New Trial*

Mr. Southern filed a posttrial motion for new trial under Ark. R. Civ. P. 59(a). Under the provision of Rule 59(b), his motion was deemed denied because the court took no action on it within thirty days "of the date on which it [was] filed or treated as filed."

Ark. R. Civ. P. 59(a) states that a new trial may be granted on the application of an aggrieved party under any of eight grounds, listed in the rule, materially affecting the


SLIP OPINION

substantial rights of the party. Mr. Southern relies upon the ground of "error in the assessment of the amount of recovery, whether too large or too small." Ark. R. Civ. P. 59(a)(5). When the primary issue is the alleged inadequacy of the damage award, we will affirm the denial of a motion for new trial absent a clear and manifest abuse of discretion. *Fritz v. Baptist Mem'l Health Care Corp.*, 92 Ark. App. 181, 211 S.W.3d 593 (2005).

A motion for new trial cannot be used to bring into the record that which does not otherwise appear of record. *Sharp Cnty. v. Ne. Ark. Planning & Consulting Co.*, 269 Ark. 336, 602 S.W.2d 627 (1980). On a motion for new trial based on newly discovered evidence, the burden is on the movant to establish that he could not with reasonable diligence have discovered and produced the evidence at the time of trial, that the evidence is not merely impeaching or cumulative, and that the additional testimony would probably have changed the result of the trial. *Piercy v. Wal-Mart Stores, Inc.*, 311 Ark. 424, 844 S.W.2d 337 (1993).

Mr. Southern first argues that a new trial should be granted to correct the circuit court's improper granting of an affirmative defense of waiver. This argument has no merit; as explained earlier in our decision, the circuit court made no ruling or finding indicating that it sua sponte granted this affirmative defense.

Second, Mr. Southern argues that untruthful testimony by CEO Coats and CFO Zeller regarding the amount of legal work he performed misled the circuit court into believing that his billing statements were padded with extra charges—especially for his billings regarding an Internet basher named "PDGood." Attached to his motion for new trial were Coats's and Zeller's emails allegedly indicating their interest in Southern's pursuing a lawsuit

7

against PDGood—emails that Southern contrasts with their testimony that they did not intend to do so and that the issue was not of much concern. He asserts that a witness who "will lie about minor things . . . also will lie about the major ones," and that these two witnesses committed fraud upon the court. These are conclusory statements at best. Southern has not met his burden of showing that either these emails, which were not introduced at trial, or "other" unidentified evidence would probably have changed the original result.

Next, Mr. Southern argues that the circuit court incorrectly assessed his relationship with appellees as their employee rather than an independent contractor—summarily placing him in the status of other company officers who were salaried employees and imputing a salary similar to theirs as a cap on his accrued billing. He points to Mr. Coats's testimony that he directed Southern to submit his bills so that they could eventually be paid. He asserts, as he did in the first and second points on appeal, that the $5,000 payments by HTI were made in accord with the "letter agreement" and were not salary, and that AHS was to have paid $300 an hour for his services, a fact supported by the spreadsheet that the circuit court ruled inadmissible. He fails to support his argument with citation to the record but offers newly presented "facts," such as one employee being paid a $10,000 salary plus commissions. He again fails to meet his burden of proving that the circuit court abused its discretion in denying his motion for new trial.

In other arguments, Mr. Southern contends that he was entitled to an additional month of payment from AHS, ending on February 18, 2013, when he resigned as CLO of both companies. He alleged in his original complaint, however, that his services at AHS ended on

January 12, 2013, and he has offered no new evidence to support his additional claim. The circuit court described the issues at AHS as complicated, finding that there was "no agreement . . . presented to the court to show what was supposed to be paid to Mr. Southern to compensate him for services to that corporation." The court clearly articulated its rationale and method for calculating the monies due from AHS, and its findings are supported by evidence in the record.

Mr. Southern alternatively requests that a new trial be held to set a higher monthly rate of pay based upon his level of work. Without reference to the abstract or record, he recites "testimony" regarding the dates on which he performed certain work. For example, he points to unidentified testimony that another investor was brought into AHS between early October 2012 and January 17, 2013, "which required an inordinately great deal of work by Mr. Southern." Suffice it to say that evidence was submitted at trial both on the amount of the monthly cap and on the caliber of work he performed. Southern cites no grounds under Rule 59(a) entitling him to a new trial for the purpose of recalculating his rate of pay and the dates involved.

Mr. Southern also refers to "anticipated testimony" in his favor should a new trial be granted—testimony supporting his position that the twenty million shares of stock he received were not meant to cancel his previous billings to HTI, but were a bonus to him for becoming a member of its board of directors. He states that Charlie Foster, a former board member and company officer, would testify that Mr. Coats told him the shares were a gift, and that Mel Robinson, the company's CFO at the time the shares were issued, would give similar

9

testimony. He has not shown that this evidence was newly discovered and could not with reasonable diligence have been produced at trial, *Sharp Cnty.*, 269 Ark. at 340, 602 S.W.2d at 630, nor did he request a continuance of the trial on damages.

Finally, Mr. Southern contends that the circuit court erred in denying his request to be reimbursed $347.28 for items he advanced to HTI because "unrefuted testimony" supported his request. He asserts that a new trial would give both parties an opportunity to contest and resolve charges. Nothing in his argument suggests that the parties previously lacked opportunity to present evidence on contested charges, an issue that turned on the circuit court's assessment of the witnesses' credibility and the weight of the evidence.

A motion for new trial is addressed to the sound discretion of the court, and the trial court's refusal to grant it will not be reversed on appeal unless an abuse of discretion is shown. *Sharp Cnty.*, 269 Ark. at 340, 602 S.W.2d at 630. We hold that there was no abuse of discretion by the circuit court in refusing to grant a new trial.

Affirmed.

WALMSLEY and HARRISON, JJ., agree.

*The Southern Law Firm*, by: *Herbert C. Southern*, for appellant.

*The Asa Hutchinson Law Group, PLC*, by: *W. Asa Hutchinson III*, for appellees.